IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EDNA L. VANCE,                                    :
                                                 :
          Plaintiff                              :
                                                 :
v.                                               :
                                                 :
ELAINE CHAO, Secretary                           :        Civil Action No. 07-0002 (ESH)
          U.S. Department of Labor,              :
                                                 :
          Defendant                              :
                                                 :

## NOTICE OF SUBSTITUTE FILING

On July 17, 2007, Plaintiff filed her Opposition to Defendant's Motion to Dismiss.

The following exhibit was included in Plaintiff's exhibit(s) in Support of her Opposition to

Defendant's Motion to Dismiss; Plaintiff filed a Notice of Lengthy Filing and served the

attached in paper format within 24 hours of filing the Notice.  On July 20, 2007, the Clerk's

office notified the undersigned that the paper filing was defective[1] and would have to be

corrected.  The undersigned has now converted the paper filing to electronic format and

substitutes this electronic version for the paper filing.

                                   Respectfully submitted,


                                   _____/S/_____
                                   Lisa Smith Sanders
                                   DC Bar No. 417142
                                   Sanders & Sanders
                                   14452 Old Mill Road, Suite 101
                                   P. O. Box 1429
                                   Upper Marlboro, MD  20773
                                   301.574.1338 voice

---

[1] Plaintiff inadvertently failed to two-hole punch the paper filing.

301.574.1435 fax
lisa.sanders@sanderslawfirm.net

Attorney for Plaintiff EDNA L. VANCE

### CERTIFICATE OF SERVICE

I hereby certify that on this 25TH day of July, 2007, the foregoing Notice of Substitute Filing was sent in the indicated manner to the following attorney(s) of record:

Via Electronic Notice:

Jeffrey A. Taylor, United States Attorney
Rudolph Contreras, Assistant United States Attorney
Michelle N. Johnson, Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W. – Room E4212
Washington, DC  20530

Via First Class Mail:
David Pena, Senior Attorney Advisor
U. S. Department of Labor
200 Constitution Avenue, N.W.
Washington, DC  20210

_____/s/_____
Lisa Smith Sanders, Esq.

*Complainant Questionnaire*
*Case Nos. 05-11-077, Edna L. Vance, Complainant*

### COMPLAINANT'S AFFIDAVIT

I, (name) Edna Lillian Vance

am an __X__ employee of ____ applicant to ____ former employee of the U.S. Department of Labor's:

(Agency) Occupational Saftey & Health Administration

(Office) Directorate of Evaluation and Analysis

(Division) Office of Statistical Analysis

(Branch) Division of Statistical Design, Evaluation and Quality Management

Located in (city and state) Washington, D.C.

In the capacity of (show both your organization title and the classification of your job, if different):

Program Analyst

Grade GS-14 between (date) 1972 and (date) present

My telephone number during working hours is: (202) 693-1879

I HAVE BEEN ADVISED OF THE FOLLOWING:

I have an obligation to cooperate fully with the investigator who has been assigned to conduct an impartial and appropriate investigation of my complaint of discrimination. Therefore, I must provide a statement for the investigative record that is true and complete to the best of my knowledge and belief and fully addresses the issues accepted for investigation. My statement must be specific with regard to names, dates, places, circumstances and related events, and disclose my firsthand knowledge of any directly related information that is relevant to the issue(s). My statement, along with my Informal Complaint, Counselor's Summary Report, Formal Complaint, and the "issue accepted for investigation" shall serve as the basis of the investigation. While I may voluntarily submit any additional documents or information to the investigator for consideration, it will be the investigator's responsibility to determine what evidence shall actually become part of the investigative report. If there are any documents or facts that substantiate my allegations, I must provide them to the investigator, or make them known to the investigator. I may suggest witnesses to be interviewed by the investigator. However, the investigator will decide which witnesses to interview based on relevant information he or she feels will be furnished.

My statement is made under oath (or affirmation), without a pledge of confidentiality, in accordance with the rules, regulations, policies, and procedures of the Equal Employment Opportunity Commission and the Department of Labor. This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown this statement or relevant portions and be given an opportunity to respond. Agency officials responsible for processing complaints of discrimination will have access to the entire investigative report. If discrimination is found, any employee accused of discrimination will have an opportunity to review a sanitized version of the report. If discrimination is found and disciplinary action is proposed, the employee accused of discrimination will have an opportunity to review the report in its entirety without deletions. Participants in the discrimination complaint process are specifically protected by law and the EEO regulations from any acts of reprisal, discrimination, coercion, harassment, restraint, or inference for their participation in the investigation and other phases of complaint processing.

I have the right to be represented by a person of my choice during presentation of my complaint and preparation of my statement (so long as my choice does not result in a conflict of interest). I have/have not chosen a personal representative at this stage of my complaint. In the event I have not chosen a representative at a later date, I will advise the investigator and the Director of the Civil Rights Center in writing.

I have the right to review my statement prior to signing it, and may make initialed corrections if it is incomplete or inaccurate. I have a right to receive a copy of the signed statement.

Having reviewed the preceding information with the investigator, I solemnly swear or affirm that the statement to follow is true and complete to the best of my knowledge and belief, and fully addresses the issues and allegations raised by me in my EEO complaint.

CRC Form 10
Rev. 3/03

```
Exhibit:     F-1
Page   1   of 117 Pages
```

Initials: _EbV_

## SUPPLEMENTAL REPRISAL AFFIDAVIT OF EDNA LILLIAN VANCE

This supplemental affidavit responds to requests for information related to my amended EEO Reprisal Complaint of August 3, 2005 (Attachment A), as outlined in the EEO Investigator's communication of September 13, 2005 (Attachment B). Many of the attachments to this supplement are identical to those provided with my initial affidavit of September 13, 2005. The attachments here are identified alphabetically. Attachments to my September 13 affidavit are identified numerically. Information in my initial affidavit may be included here by reference. Also, the dates in this supplemental affidavit may differ slightly from dates identified in the September 13 affidavit; the dates that appear in this affidavit have been verified and may therefore be regarded as correct.

1.    *"Please state for the record your full name."*

**Response**:    My name is Edna Lillian Vance.

**Background**.    I have been employed with the Occupational Safety and Health Administration (OSHA), U.S. Department of Labor (DOL) since 1972. I am a GS-14 Program Analyst. I filed an Informal EEO Complaint on June 10, 1998, and a Formal EEO Complaint on September 9, 1998, alleging race and age discrimination. On May 11, 2000, I filed an Informal EEO Complaint, and on August 25, 2000, a Formal EEO Complaint alleging reprisal. Both of these previous EEO complaints became civil actions in the U.S. District Court for the District of Columbia. Through legal counsel, I have been engaged in discussions to finalize a settlement agreement in the civil action since October 2000. I filed my current Informal EEO Complaint on February 25, 2005, and my Formal EEO Complaint on March 17, 2005, alleging reprisal for my prior EEO activity when OSHA management changed my Fiscal Year 2004 (2004) performance appraisal, without my knowledge, and processed it as my final Rating of Record, and denied me a performance award for the 2004 appraisal year. On **August 3, 2005**, I filed an amendment to my February 25, 2005, Informal EEO Complaint alleging continuing harassment and retaliation related to an adverse performance action.

In May 1999, I filed a Civil Action in U.S. District Court related to the Informal and Formal

EEO Complaints I filed with DOL in 1998. This court case has been going on for more than six years even though there was an agreement to settle in 1999. In October 1999, the Justice Department offered to settle the case before it went to trial. OSHA delayed settlement by raising objections to every solution proposed, even though their objections were unfounded. In May 2000, the Court was petitioned to continue discovery proceedings and to schedule trial. In September 2000, the Justice Department, again, offered to settle the case to include assigning me to an IPA. Over the next two years, preliminary agreements were established with two different organizations to satisfy that part of the settlement agreement because OSHA insisted that an IPA assignment be completed before it would proceed with any settlement. In both cases, OSHA delayed settlement by not responding to a related request for information until both agreements had collapsed. In either case, I believed, OSHA's response would have taken less than two hours to prepare. In October 2002, the Court was petitioned to restore proceedings because settlement could not be reached. In November 2002, the Justice Department filed a brief stating that, in good faith, they would settle the case. In 2003, a preliminary agreement was established with another organization to satisfy the IPA part of the settlement agreement. Again, more than 1½ years, OSHA delayed settlement by not responding to a related request for information. The Court was petitioned again in October 2004 to restore proceedings because settlement had stalled. In response to this petition, the Judge initiated procedures to call a meeting of the parties. Before the meeting could be scheduled, OSHA responded in November 2004, by providing the requested information -- a half page of typed information. This response represented the first real progress in settling the case and the second step toward removing the one obstacle that OSHA had consistently used to delay settlement. Now, OSHA had no reason not to move forward with settlement. It should be noted that, since November 2004, OSHA has taken no further action to finalize the settlement agreement and has not responded to any inquiries from my counsel.

2.    *"You allege that you were rated Highly Effective on your performance appraisal after being placed on a 90-Day Performance Plan because of your prior EEO activity. Please respond to the following questions. Please be as specific as possible describing circumstances, providing facts (i.e. dates, names, titles, places, etc.). In as much detail as possible and in a time*

*sensitive chronology. Please submit available documentary evidence to corroborate your testimony."*

a.  *"Exactly who provided you with the appraisal at issue?"*

**<u>Response</u>**:

Joseph DuBois signed the appraisal at issue on July 20, 2005, as Rating Official and Robert Pitulej signed on July 27, 2005, as Reviewing Official (Attachment C).

Mr. DuBois is my supervisor and the Director of the Office of Statistical Analysis, Directorate of Evaluation and Analysis (DEA). Mr. DuBois signed my pervious three (3) performance appraisals in his current capacity. Mr. Pitulej is Deputy Director of DEA. He officially joined DEA the week of December 6, 2004, although he had been briefed and physically moved to the directorate weeks earlier (Attachment D). Previous to December 2004, Mr. Pitulej was the Deputy Director of OSHA's Directorate of Cooperative and State Programs.

b.  *"What exactly occurred or was said? What was the rating period? What was the summary rating? (Provide a copy of any relevant documentation.)"*

**<u>Response</u>**:

On **<u>December 1, 2004</u>** (around 2:30 p.m.), Joseph DuBois, stopped at my desk and presented me with my 2004 performance appraisal (Attachment E). The appraisal reduced my overall performance rating from Outstanding the previous years, to Highly Effective. When Mr. DuBois handed me the appraisal, he commented that, "Frank [Frodyma, Deputy Director, Directorate of Evaluation and Analysis] said he's not giving out a lot of outstandings this year." Mr. DuBois provided no further explanation of his appraisal of my performance. Mr. Frodyma was the Reviewing Official on December 1, 2004, and had already signed other appraisals in the directorate in this capacity. Mr. DuBois' previous three appraisals rated my performance as Outstanding (Attachment F). (See my Affidavit of September 13, 2005, pages

4-8, for more information.)

On **December 3, 2004**, while I was on approved leave, Clay Taylor, a Local 12 Union Representative in the Directorate of Evaluation and Analysis (DEA), met with Keith Goddard and Robert Pitulej (Director and Deputy Director, DEA) in a 'good faith' effort to resolve issues related to my 2004 performance appraisal. Ms. Taylor related three concerns, the appraisal was on the wrong form, I had no approved standards and elements in place in 2004, and the inconsistent rating of the same performance statement. To resolve these issues, Ms. Taylor recommended putting me under 90-day standards and elements, developing a new appraisal at the end of that period to include 2004 performances, and rating my performance as Outstanding. According to Ms. Taylor, Keith Goddard and Robert Pitulej were receptive and she felt that they were going to follow through on her recommendations. They promised to report back to her; they never did. DOL Personnel Regulations (Chapter 430, Section 7. Appraisal of Performance) provide that, "If an employee has not been under a performance plan for the minimum 90-day appraisal period by the end of the cycle, the rating official will extend the appraisal period and rate the employee after 90 days under the plan." This 90-day extension can only be applied in September or at the end of the appraisal cycle, it is not an option at any other time. This option could not be applied in my case, because we were already about 2 ½ months into the next appraisal cycle. Also, DOL Personnel Regulations are clear that appraisals reflect tasks completed during the time covered by the Performance Plan. Including 2004 tasks in a 2005 appraisal would not be appropriate.

On **December 6 or 7, 2004**, while I was on approved leave, I took a call at my home from my supervisor, Mr. DuBois. He said that Keith [Goddard] told him to call me and tell me that my [2004] appraisal was on the wrong form and was put on the right form, that there were no changes, that my rating was still Highly Effective, and that if I did not sign the appraisal it would become final. I reminded Mr. DuBois that I was on leave. I asked Mr. DuBois if my rating was still Highly Effective because Frank said he's not giving out a lot of outstanding [ratings]. He changed his story and said that it was Keith [Goddard] who told him that, not Frank [Frodyma]. When my appraisal was given to me on December 1, 2004, Frank Frodyma was Reviewing Official and had already signed other employee appraisals of the directorate in

that capacity. Mr. Frodyma left the Deputy Director position effective December 4, 2004. Mr. Goddard joined OSHA in June 2004. In November 2004, I worked closely with him on the Recordkeeping Handbook.

I was the only person in my division whose overall performance rating was reduced based on a decision by OSHA management. I believe this action was an act of retaliation and reprisal for my participation in past protected activity and my unwillingness to drop my current civil action. OSHA management's goal was to reduce my overall performance rating; they were not concerned that they broke or violated the rules or regulations in the process. I understand that OSHA management often uses "bad manager" or "bad management" to excuse or cover planned activity.

On **January 24, 2005**, when I returned to work, I found a copy of my 2004 performance appraisal on my desk (Attachment G), and discovered that it had been altered, without my knowledge. Management had created a new appraisal by changing the rating for Element 5 from Exceeds to Meets to support an earlier management decision to reduce my overall performance rating from Outstanding the previous years, to Highly Effective. The appraisal was then processed as my final Rating of Record while I was on approved leave. For the past three years my performance has been rated Outstanding. Nonetheless, I believed this appraisal was OSHA's official appraisal of my performance for 2004. It had been signed by the Rating Official and approved by the Reviewing Official. I believed this even though there were questions about the appraisal's validity. I also believed that the lowering of my overall performance rating to Highly Effective was an act of reprisal for my past participation in protected activity, and my unwillingness to drop my current civil action.

When Mr. DuBois signed the appraisal, he knew he had not established the basis for appraising my performance for 2004. In the section 'Establishment of the Performance Management Plan,' there was no signature or date indicating that Mr. DuBois' elements and standards had been reviewed and approved by the Reviewing Official. In fact, I was never presented with elements and standards for 2004. DOL Personnel Regulations (Chapter 430, Section 6. Performance Plan) provide that, ". . . the Rating Official prepares a performance plan annually

for each employee, have them reviewed by a higher level official and communicate the plans to each employee. The plans become effective and the appraisal period begins at the time the plans are approved by the Reviewing Official."

On **January 25, 2005**, one day after I returned from approved leave and found a copy my 2004 appraisal on my desk, I was presented with a 90-day Performance Plan by my supervisor, Joseph DuBois (Attachment H). Mr. DuBois stated that the OSHA Personnel Office said I needed to be put on a 90-day plan because I did not sign my [2004] performance appraisal. I reminded Mr.Dubois that I was on approved leave at the time. He explained that a new standard and element had been added to the 90-day plan to cover the project I volunteered to do for John Smith. I reminded Mr. DuBois that Mr. Goddard had asked me to do the project and that I do not refuse assignments. Mr. DuBois did not explain his 90-day elements and standards.

The appraisal period for the 90-day Performance Plan was identified as January 24, 2005 to April 30, 2005. There were no signatures or dates on the plan, and, except for the one new element and standard related to development of the field audit handbook [John Smith's project], the remaining elements and standards were identical to those of my 2004 and 2003 performance appraisals (Attachments F and G).

As a manager and supervisor with many years of experience, Mr. DuBois knew that the reason the Office of Personnel cited for putting me under a 90-day Performance Plan was not a valid reason. He knew that employees do not have to sign their performance appraisals for them to become final. DOL Personnel Regulations (Chapter 430, Section 6. Performance Plans) provide that, "Rating Officials prepare performance plans and communicate them to the employees at the beginning of each performance appraisal cycle. New or revised performance plans are required if duties, responsibilities, resources or priorities change significantly. If an employee has not been under a performance plan for the minimum 90-day appraisal period by the end of the cycle, the rating official will extend the appraisal period and rate the employee after 90 days under the plan."

Mr. DuBois knew when he presented me with the 90-day Performance Plan that I would question this action. On January 25, 2005, I consulted with Local 12 Union Representative Linda Copening of the Employment Standards Administration (ESA). She explained the regulations governing appraisals and performance plans. Over the next week, Ms. Copening made a number of calls to OSHA's Personnel Director, Doug Goodell, to get some answers. None of her calls were returned. When she finally accosted Mr. Goodell in the hall, he said he was told that the 90-plan was because I was under standards and elements for only part of the year. When Ms. Copening asked what that meant, he did not respond. Mr. Goodell promised to look into the matter.

On **February 10, 2005**, Mr. DuBois presented me with a revised 90-day Performance Plan (Attachment I). I sent Mr. DuBois an e-mail confirming the reason I was being put under a 90-day plan (Attachment J). He did not respond to my email. There were no signatures or dates on the plan, and all of the elements and standards were identical to the elements and standards of my 2003 and 2004 performance appraisals (Attachments F and G). The appraisal period was February 7, 2005 to May 9, 2005. Mr. DuBois stated that the new element and standard on the handbook had been deleted. However, he did not explain his 90-day elements and standards (see my Affidavit of September 13, 2005, for more information).

DOL Personnel Regulations (Chapter 430, Section 6. Performance Plans), provide that, "Rating Officials prepare performance plans and communicate them to the employees at the beginning of each performance appraisal cycle. New or revised performance plans are required if duties, responsibilities, resources or priorities change significantly. If an employee has not been under a performance plan for the minimum 90-day appraisal period by the end of the cycle, the rating official will extend the appraisal period and rate the employee after 90 days under the plan."

On **February 24, 2005**, I returned the revised 90-day Performance Plan to Mr. DuBois (Attachment I). My comments were attached (Attachment I).

OSHA Management had no valid reason for placing me under a 90-day Performance Plan. In fact, the official DOL personnel computer system (People Power) identified my next Review Date as 09/30/05 (Attachment K). I was the only one in my division put on a 90-day plan, and,

I believe, the only one in my directorate. Clay Taylor, a Program Analyst of the Directorate of Evaluation and Analysis (DEA), did not sign her appraisal and she was not put on a 90-day plan. OSHA management's ultimate goal in putting me under a 90-day plan was to reduce my overall performance rating to support their earlier decision; they were not concerned that they broke or violated the rules or regulations in the process. I understand that OSHA management often uses "bad manager" or "bad management" to excuse or cover planned activity.

On **March 7, 2005**, my supervisor, Mr. DuBois, stopped at my desk and presented me with a signed and dated copy of his 90-day Performance Plan for me (Attachment L). My comments were attached to the front of the plan. He stated that I would be under these elements and standards for the next 90-days. The plan covered the period of time from March 1, 2005 to June 1, 2005. Mr. DuBois signed the plan as Rating Official and Robert Pitulej signed as Reviewing Official. Mr. DuBois did not explain his standards and elements, provide any assignments or discuss his expectations over the 90-day period.

On **March 8 or 9, 2005**, I went to Mr. DuBois and asked if he had any assignments for me. He explained that OSHA was collecting data on immigrant/Hispanic fatalities that needed to be looked at. He gave me some background on why and how the data was being collected. He did not explain his expectations or give me a timetable. I suggested that I could start looking at the data along the same line as the logging fatality data I reported on several years ago. I reminded him that the logging fatality report was based on 104-108 cases, not the roughly 1,000 immigrant/Hispanic cases that now exist. While the logging report took several years to develop, a report on 1,000 immigrant/ Hispanic case files could take considerably longer. Mr. DuBois confirmed that I would need to review each immigrant/Hispanic fatality case file and manually collate the information. Mr. DuBois provided me with national and regional data, but no individual case data. My performance on the logging report was rated as Outstanding.

On **April 26, 2005**, when I was convinced that I would not receive any additional information from Mr. DuBois on Immigrant/Hispanic fatalities, I developed and presented him with several copies of a preliminary report reflecting the information he had provided -- the OSHA Immigrant/Hispanic Questionnaire with two years of responses, and an analysis with support

graphics and tables representing his data and other research information (see my Affidavit of September 13, 2005, Attachment 15). Mr. DuBois told me that he planned to arrange a meeting with Tom Galassi, Deputy Director of Enforcement Programs, to go over my materials and get some feedback on their usefulness for distribution to OSHA field offices. I assumed I was to be a part of that meeting. Mr. DuBois told me not to do any additional work on the data until we got feedback from Mr. Galassi. I asked Mr. DuBois almost every day for about two weeks whether he had arranged a meeting with Mr. Galassi, and he said no. I stopped asking, and I have gotten no feedback. I have also not received any additional data or assignments from Mr. DuBois.

On **July 20, 2005**, Joseph DuBois stopped at my desk and presented me with his appraisal of my performance for the 90-day period, March 1, 2005 - June 1, 2005 (Attachment M). He had signed and dated the appraisal as Rating Official. He did not explain his appraisal of my performance. On page 1, he did not check either block under Performance Appraisal and Rating to indicate his overall rating of my performance, and on page 2, he did not indicate the Purpose of Appraisal, i.e., Interim Rating or Rating of Record.

On **July 26, 2005**, I returned the appraisal with my comments (Attachment N).

When Mr. DuBois presented me with the appraisal on July 20, 2005, more than 30 days had expired since June 1, 2005, the end of the review period. DOL Personnel Regulations (Chapter 430, Section 7. Appraisal of Performance) provide that, "Within 30 days after the end of the rating period, each employee normally will receive an annual performance rating of record." Article 14 (Performance Management System), Section 5 (Annual Rating of Record) of the Agreement Between Local 12, AFGE, AFL-CIO and the U.S,. Department of Labor (effective March 20, 2005) provides that, ". . . The rating may be completed 30 days prior to the due date but not later than 30 days after the due date."

On **July 27, 2005**, the Reviewing Official, Robert Pitulej, signed the appraisal approving the Rating Official's assessment of my performance for the period of March 1, 2005 - June 1, 2005.

**On August 1, 2005**, I discovered a copy of the approved appraisal on my desk (Attachment C). My comments and a copy of my February 10, 2005, email confirming the reason for the 90-day Performance Plan, were attached. As the appraisal indicates, no mid-term progress review was conducted during the rating period, my performance rating was checked as Highly Effective, and the Purpose of Appraisal (Interim Rating or Rating of Record) was not indicated.

Mr. DuBois rated my overall performance as Highly Effective in continued support for management's earlier decision to reduce my rating. He did not explain his appraisal of my performance. At no time during my interaction with Mr. DuBois over the 90-day period, did he ever discuss my performance or how it related to the elements and standards. For Elements 3 and 4, Mr. DuBois rated my performance based on tasks that I completed in 2004. For Elements 2 and 5, Mr. DuBois rated my performance Meets and chose not to include a statement. Because Mr. DuBois did not discuss his assessment of my performance as it related to these elements, I have no idea what I did or did not do or how I might improve. More important, Mr. DuBois had no valid basis for rating my performance for the 90-day period, because management had no valid reason for putting me under and 90-day Performance Plan on March 1, 2005. Moreover, management knew this fact, and, therefore, refused to indicate on the appraisal whether it represented an Interim Rating or a Rating of Record.

**Background**.    In May 1999, I filed a Civil Action in U.S. District Court related to the Informal and Formal EEO Complaints I filed with DOL in 1998. This court case has been going on for more than six years even though there was an agreement to settle in 1999. In October 1999, the Justice Department offered to settle the case before it went to trial. OSHA delayed settlement by raising objections to every solution proposed, even though their objections were unfounded. In May 2000, the Court was petitioned to continue discovery proceedings and to schedule trial. In September 2000, the Justice Department, again, offered to settle the case to include assigning me to an IPA. Over the next two years, preliminary agreements were established with two different organizations to satisfy that part of the settlement agreement because OSHA insisted that an IPA assignment be completed before it would proceed with any settlement. In both cases, OSHA delayed settlement by not responding

to a related request for information until both agreements had collapsed. In either case, I believed, OSHA's response would have taken less than two hours to prepare. In October 2002, the Court was petitioned to restore proceedings because settlement could not be reached. In November 2002, the Justice Department filed a brief stating that, in good faith, they would settle the case. In 2003, a preliminary agreement was established with another organization to satisfy the IPA part of the settlement agreement. Again, more than 1½ years, OSHA delayed settlement by not responding to a related request for information. The Court was petitioned again in October 2004 to restore proceedings because settlement had stalled. In response to this petition, the Judge initiated procedures to call a meeting of the parties. Before the meeting could be scheduled, OSHA responded in November 2004, by providing the requested information -- a half page of typed information. This response represented the first real progress in settling the case and the second step toward removing the one obstacle that OSHA had consistently used to delay settlement. Now, OSHA had no reason not to move forward with settlement. It should be noted that, since November 2004, OSHA has taken no further action to finalize the settlement agreement and has not responded to any inquiries from my counsel.

On December 1, 2004, OSHA management made a decision to reduce my overall performance rating from Outstanding of previous years, to Highly Effective, and to deny me a 2004 performance award. They made these decisions and took these actions even though they knew they were in violation of DOL regulations. Moreover, in their determination to document a lower performance rating for me, they developed three (3) different appraisals for me over an eight-month period. These actions were acts of retaliation and reprisal for my past participation in protected activity and my unwillingness to drop my current civil action.

So many years have expired since I filed my case in 1998. Therefore, many other managers and employees have gained some knowledge of my case simply through word of mouth. In addition, since June 1998, a number of OSHA managers and employees have gained knowledge of my EEO case and activities because they have been involved with or impacted by the processes. In 1999, the Justice Department interviewed and met with a number of OSHA managers about my civil action. When I filed my EEO Reprisal Complaint in August 2000, a

number of managers were part of the investigation. In September 2000, a number of managers and employees were identified and scheduled for depositions in my civil action. So far, I believe, the settlement negotiations of my case have directly involved the Director and Deputy Director of the Directorate of Administrative Program, the Director and staff of OSHA's Office of Personnel, and the Office of the Assistant Secretary for OSHA. I also believe the top management of my directorate is kept informed of all activity related to my case.

c.    *"Do you agree with the basis for the rating?"*

**Response**:

OSHA management had no valid reason for putting me under a 90-day Performance Plan on March 1, 2005, and therefore, no valid basis for rating my performance in July 2005. DOL Personnel Regulations (Chapter 430, Section 6. Performance Plans) provide that, "Rating Officials prepare performance plans and communicate them to the employees at the beginning of each performance appraisal cycle. New or revised performance plans are required if duties, responsibilities, resources or priorities change significantly. If an employee has not been under a performance plan for the minimum 90-day appraisal period by the end of the cycle, the rating official will extend the appraisal period and rate the employee after 90 days under the plan."

When OSHA Management processed the 2004 appraisal for me in December 2004, they established the next appraisal date as September 30, 2005. The official DOL personnel computer system (People Power) confirmed this date (Attachment K). Further, as a manager and supervisor with many years of experience, Mr. DuBois knew that the reason the Office of Personnel cited for putting me under a 90-day Performance Plan was not a valid reason. He knew that employees do not have to sign their performance appraisals for them to become final. Clay Taylor, a Program Analyst in the Directorate of Evaluation and Analysis (DEA), did not sign her appraisal and she was not put on a 90-day plan.

d.    *"If no, for each element rating of your appraisal that you disagree with, what rating do you think you should have received and provide justification (including*

*documentary evidence to corroborate your testimony) as appropriate."*

**Response**:

OSHA management had no valid reason for putting me under a 90-day Performance Plan on March 1, 2005, and, therefore, no valid basis for rating my performance in July 2005. In taking these actions, OSHA management ignored DOL Personnel Regulations (Chapter 430, Section 6, Performance Plans) that provide that, "Rating Officials prepare performance plans and communicate them to the employees at the beginning of each performance appraisal cycle. New or revised performance plans are required if duties, responsibilities, resources or priorities change significantly. If an employee has not been under a performance plan for the minimum 90-day appraisal period by the end of the cycle, the rating official will extend the appraisal period and rate the employee after 90 days under the plan."

e.     *"Exactly when did you receive the rating of issue?"*

**Response**:

On **July 20, 2005**, at 4:20 p.m., Joseph DuBois stopped at my desk and handed me his appraisal of my performance for the period of March 1, 2005 to June 1, 2005 (Attachment M). He did not explain his appraisal of my performance.

On **July 26, 2005**, I returned the appraisal with my written comments (Attachment N). The appraisal was approved by the Reviewing Official, Robert Pitulej, on July 27, 2005. The appraisal was overdue. Article 14 (Performance Management System), Section 5.a. (Annual Rating of Record) of The Agreement Between Local 12, AFGE, AFL-CIO and the U.S. Department of Labor (effective March 20, 2005), provides that, ". . . ratings may be completed 30 days prior to the due date but not later than 30 days after the due date."

On **August 1, 2005**, a copy of the approved appraisal was left on my desk, and I discovered it around 9:30 or 10:00 a.m.

f.      *"How has the rating at issue affected you?  Has your employment and/or job*
        *performance been affected in any way?"*

**Response**: Yes.

OSHA's determination to reduce my performance rating has caused me a lot of stress and
anxiety, affecting my well-being and my health.  The stress and anxiety arises from my fear that
OSHA will try to use the reduced rating to renege on the purported settlement agreement
reached in the civil action.  In addition, I have grave concerns that this act, along with OSHA'S
continued prolonging of ratifying the settlement, is just the beginning of OSHA's intensification
of efforts to force me to drop my civil action and the 6-year old settlement we had supposedly
reached.  Over an eight-month period OSHA produced three (3) different appraisals of my
performance, and in each case rated my performance down.  These ratings were never
discussed with me and I was never given an opportunity to improve.  I am no longer confident
in my performance.  I spend a lot of time changing things because I no longer know what I am
doing right or what I am doing wrong.  I no longer know whether I am producing Outstanding/
Exemplary work, or just acceptable work.  Because management ignored the regulations in
taking these actions against me, I am nervous as to what they will do next.  This nervousness
cases me to eat constantly, and I have regained the weight I lost two years ago.

I am embarrassed by what management has done to me.  I know of no one in my division, or
office whose performance was reduced at management's direction, whose appraisal was
modified without their knowledge and finalized, whose performance award was canceled, and
whose performance rating was reduced in the middle of the year based on a 90-day
Performance Plan that was directed by the Office of Personnel.  All of these actions were done
without any discussions with me.  Co-workers I have talked with find it difficult to believe
management would do such things.  They see me as a good employee, and question why bad
employees are treated better.  They empathize with my struggles to deal with management's
actions, and they feel sorry for me.  I am embarrassed that I have not been able to stop these
actions against me.

I am angry that management has singled me out for punishment because I exercised my rights to participate in a protected activity. Equal Employment Opportunity is the law, and individuals who point out violations of the law are supposed to be protected by the law. I am angry that these actions were allowed to happen to me, and that management continues to feel free to take actions in harassment, retaliation and reprisal. I am angry that I am often looked upon as the bad guy.

Management knew that the impact of its decision would cause me financial harm. Everyone knows that employees with less than Outstanding/Exemplary performance ratings do not get jobs and promotions. In addition I have been deprived of the higher performance awards and the increase in salary from Quality Step Increases.

g.    *"What, other reasons, if any, were you given for the rating?"*

**Response**:

On **December 1, 2004**, Joseph DuBois told me, when he stopped at my desk and handed me my 2004 appraisal, that Frank Frodyma, the Deputy Director, made the decision to reduce my overall performance rating from Outstanding the previous years, to Highly Effective.

On **December 6 or 7, 2004**, Joseph DuBois told me, when he called me at home while I was on approved leave, that Keith Goddard, the Director, made the decision to process a Highly Effective rating for me while I was on approved leave.

On **January 25, 2005** and **February 10, 2005**, Joseph DuBois told me when he stopped at my desk and handed me his 90-day Performance Plan that the Personnel Office directed that I be put on a 90-day Performance Plan in January 2005, which resulted in a Highly Effective rating in July 2005.

h.    *"Are you aware of anyone else in your office that has been similarly rated?"*

**Response**:

No, I am not aware of anyone in my division or office who was put on a 90-day Performance Plan by the OSHA Personnel Office for not signing their 2004 appraisal, and whose subsequent performance rating was reduced from Outstanding of previous years, to Highly Effective to support an earlier management decision.

i.     *"Who specifically do you believe discriminated against you in this matter and how?"*

**Response**:

I believe OSHA management discriminated against me.

When Frank Frodyma made the decision, as a manager, to reduce my overall performance rating from Outstanding the previous years, to Highly Effective, the decision was supported by other managers even though they were aware that it violated DOL Personnel Regulations. I had no direct interaction with Mr. Frodyma on assignments. When my 2004 appraisal was changed without my knowledge and processed as my final Rating of Record, other managers participated in the process, including the Director of Personnel who accepted and processed the appraisal even though there was clear physical evidence that it was in violation of DOL Personnel Regulations. When the OSHA Personnel Office directed that I am put on a 90-day Performance Plan for not signing my 2004 appraisal, and when my performance was then rated down without any discussions or meetings with me, OSHA managers supported these actions even though they knew they were in violation of DOL Personnel Regulations.

All of these managers had some level of knowledge of my EEO case or activity. The Director of Personnel is a central figure in OSHA in the settlement negotiations related to my case because of the nature of the issues to be resolved. I believe he knows a great deal about my case. The personnel-related document that was produced by OSHA in November 2004 as part of my settlement negotiations was probably developed under the supervision of the Director of

Personnel. In his position as Acting Director and Deputy Director of the directorate, Frank Frodyma was in a position to interact directly with the Director of Personnel and OSHA's EEO Office on EEO issues involving directorate employees. Over the years, Mr. Frodyma had a number of EEO complaints filed against him. Mr. Goddard personally told me in November 2004, that he knew that I had an EEO case. As Director, he is in a position to interact with others in OSHA who have information on EEO cases involving his employees. Mr. DuBois was my supervisor when I filed my EEO complaint in 1998, he will be deposed in my civil case, and he has knowledge of the EEO Reprisal Complaint I filed in 2000. Mr. Pitulej, although new to my directorate (Attachment D), was briefed by his predecessor, Frank Frodyma, on personnel issues before he left. He was also briefed by Clay Taylor, a Local 12 Union Representative of the directorate, on issues related to my 2004 appraisal and Mr. Frodyma's decision to reduce my overall performance rating. He is industrious and, I believe, he currently knows more about my EEO case and activities than anyone in the directorate. He supported Mr. Frodyma's decision to reduce my overall rating from Outstanding to Highly Effective, and the 90-day Performance Plan directed by the Personnel Office and subsequent rating. He, like other managers, supported these actions even though they were in violation of DOL Personnel Regulations.

So many years have expired since I filed my case in 1998. Therefore, many other managers and employees have gained some knowledge of my case simply through word of mouth. In addition, since June 1998, a number of OSHA managers and employees have gained knowledge of my EEO case and activities because they have been involved with or impacted by the processes. In 1999, the Justice Department interviewed and met with a number of OSHA managers about my civil action. When I filed my EEO Reprisal Complaint in August 2000, a number of managers were part of the investigation. In September 2000, a number of managers and employees were identified and scheduled for depositions in my civil action. So far, I believe, the settlement negotiations of my case have directly involved the Director and Deputy Director of the Directorate of Administrative Program, the Director and staff of OSHA's Office of Personnel, and the Office of the Assistant Secretary for OSHA. I also believe the top management of my directorate is kept informed of all activity related to my case.

j.     *"How do you know that the reason for the rating was because of your previous
       participation in the EEO process? Does some connection exist between your
       protected activity and the incident at issue?"*

**Response**:

In May 1999, I filed a Civil Action in U.S. District Court related to the Informal and Formal
EEO Complaints I filed with DOL in 1998. This court case has been going on for more than
six years even though there was an agreement to settle in 1999. In October 1999, the Justice
Department offered to settle the case before it went to trial. OSHA delayed settlement by
raising objections to every solution proposed, even though their objections were unfounded. In
May 2000, the Court was petitioned to continue discovery proceedings and to schedule trial. In
September 2000, the Justice Department, again, offered to settle the case to include assigning
me to an IPA. Over the next two years, preliminary agreements were established with two
different organizations to satisfy that part of the settlement agreement because OSHA insisted
that an IPA assignment be completed before it would proceed with any settlement. In both
cases, OSHA delayed settlement by not responding to a related request for information until
both agreements had collapsed. In either case, I believed, OSHA's response would have taken
less than two hours to prepare. In October 2002, the Court was petitioned to restore
proceedings because settlement could not be reached. In November 2002, the Justice
Department filed a brief stating that, in good faith, they would settle the case. In 2003, a
preliminary agreement was established with another organization to satisfy the IPA part of the
settlement agreement. Again, more than 1½ years, OSHA delayed settlement by not
responding to a related request for information. The Court was petitioned again in October
2004 to restore proceedings because settlement had stalled. In response to this petition, the
Judge initiated procedures to call a meeting of the parties. Before the meeting could be
scheduled, OSHA responded in November 2004, by providing the requested information -- a
half page of typed information. This response represented the first real progress in settling the
case and the second step toward removing the one obstacle that OSHA had consistently used to
delay settlement. Now, OSHA had no reason not to move forward with settlement. It should
be noted that, since November 2004, OSHA has taken no further action to finalize the

settlement agreement and has not responded to any inquiries from my counsel.

It was no coincidence that after OSHA provided information needed to move the settlement negotiations of my case forward in November 2004, OSHA management made the decision on December 1, 2004, to reduce my overall performance rating from Outstanding the previous years, to Highly Effective. It is my belief that OSHA management wants an excuse to renege on the settlement. Until November 2004, OSHA management had been successful in delaying court proceedings and negotiations. This time, however, I believe OSHA had no choice but to respond to the request for information. I further believe that the decision to reduce my rating represents the beginning of many actions that will be taken against me in an effort to force me to drop the case. My case involves some top level managers and settlement will impact personnel arrangements of my office and directorate. When Frank Frodyma made the decision and Joseph DuBois took the action to reduce my performance rating, they each had more than 15 years of experience as a manager or supervisor. They knew what they did violated DOL Personnel Regulations. When Mr. Frodyma left his position as Deputy Director, other managers were expected to continue to support the decision. Over an eight-month period (December 1, 2004 to July 27, 2005), OSHA developed three different appraisals that consistently rating my performance Highly Effective. Prior to December 1, 2004, my performance was consistently rated Outstanding. My performance in 2004 and 2005 was the same as my performance in 2001, 2002 and 2003. There were no meetings with me in 2004 or 2005 to tell me otherwise, nor was there an opportunity to improve.

k.    *"Did you discuss that you felt that the rating was because of your previous participation in the EEO process with anyone in management? If yes, with whom and what was their response?"*

**Response**: No.

l.    *"How do you know the agency was aware of your protected activity when the rating occurred?"*

**Response**:

In May 1999, I filed a Civil Action in U.S. District Court related to the Informal and Formal EEO Complaints I filed with DOL in 1998. This court case has been going on for more than six years even though there was an agreement to settle in 1999. In October 1999, the Justice Department offered to settle the case before it went to trial. OSHA delayed settlement by raising objections to every solution proposed, even though their objections were unfounded. In May 2000, the Court was petitioned to continue discovery proceedings and to schedule trial. In September 2000, the Justice Department, again, offered to settle the case to include assigning me to an IPA. Over the next two years, preliminary agreements were established with two different organizations to satisfy that part of the settlement agreement because OSHA insisted that an IPA assignment be completed before it would proceed with any settlement. In both cases, OSHA delayed settlement by not responding to a related request for information until both agreements had collapsed. In either case, I believed, OSHA's response would have taken less than two hours to prepare. In October 2002, the Court was petitioned to restore proceedings because settlement could not be reached. In November 2002, the Justice Department filed a brief stating that, in good faith, they would settle the case. In 2003, a preliminary agreement was established with another organization to satisfy the IPA part of the settlement agreement. Again, more than 1½ years, OSHA delayed settlement by not responding to a related request for information. The Court was petitioned again in October 2004 to restore proceedings because settlement had stalled. In response to this petition, the Judge initiated procedures to call a meeting of the parties. Before the meeting could be scheduled, OSHA responded in November 2004, by providing the requested information -- a half page of typed information. This response represented the first real progress in settling the case and the second step toward removing the one obstacle that OSHA had consistently used to delay settlement. Now, OSHA had no reason not to move forward with settlement. It should be noted that, since November 2004, OSHA has taken no further action to finalize the settlement agreement and has not responded to any inquiries from my counsel.

OSHA managers and supervisors are made aware of complaints filed by employees through informal channels of communications. Although they may not be informed of all the details of

each complaint, they are aware of the basic issues. In my 2000 EEO Reprisal Complaint Affidavit, I recounted my supervisor's statement that he was being provided with information on my case, including the decision to settle. So, it was no coincidence that after OSHA provided information needed in November 2004 to move the settlement negotiations forward, OSHA management made the decision on December 1, 2004, to reduce my overall performance rating from Outstanding the previous years, to Highly Effective.

The managers mentioned in this affidavit had some level of knowledge of my EEO case or activity. The Director of Personnel is a central figure in OSHA in the settlement negotiations related to my case because of the nature of the issues to be resolved. I believe he knows a great deal about my case. The personnel-related document that was produced by OSHA in November 2004 as part of my settlement negotiations was probably developed under the supervision of the Director of Personnel. In his position as Acting Director and Deputy Director of the directorate, Frank Frodyma, was in a position to interact directly with the Director of Personnel and OSHA's EEO Office on EEO issues involving directorate employees. Over the years, Mr. Frodyma had a number of EEO complaints filed against him. Mr. Goddard personally told me in November 2004, that he knew that I had an EEO case. As Director, he is in a position to interact with others in OSHA who have information on EEO cases involving his employees. Mr. DuBois was my supervisor when I filed my EEO complaint in 1998, he will be deposed in my civil case, and he has knowledge of the EEO Reprisal Complaint I filed in 2000. Mr. Pitulej, although new to my directorate (Attachment D), was briefed by his predecessor, Frank Frodyma, on personnel issues before he left. He was also briefed by Clay Taylor, a Local 12 Union Representative of the directorate, on issues related to my 2004 appraisal and Mr. Frodyma's decision to reduce my overall performance rating. He is industrious and, I believe, he currently knows more about my EEO case and activities than anyone in the directorate. He supported Mr. Frodyma's decision to reduce my overall rating from Outstanding to Highly Effective, and the 90-day Performance Plan directed by the Personnel Office and subsequent rating. He, like other managers, supported these actions even though they were in violation of DOL Personnel Regulations.

So many years have expired since I filed my case in 1998. Therefore, many other managers

and employees have gained some knowledge of my case simply through word of mouth. In addition, since June 1998, a number of OSHA managers and employees have gained knowledge of my EEO case and activities because they have been involved with or impacted by the processes. In 1999, the Justice Department interviewed and met with a number of OSHA managers about my civil action. When I filed my EEO Reprisal Complaint in August 2000, a number of managers were part of the investigation. In September 2000, a number of managers and employees were identified and scheduled for depositions in my civil action. So far, I believe, the settlement negotiations of my case have directly involved the Director and Deputy Director of the Directorate of Administrative Program, the Director and staff of OSHA's Office of Personnel, and the Office of the Assistant Secretary for OSHA. I also believe the top management of my directorate is kept informed of all activity related to my case.

3.    *"In your affidavit signed September 13, 2005, you state: "Initially, I had assumed that OSHA Management made a decision not to give me an award after my appraisal was processed. Much later in June or July 2005, other information entered in my People Power file indicated that OSHA Management canceled my award on December 1, 2004 (Attachment 9), the same day that management decided to reduce my overall performance rating. More important, the award was canceled before my performance appraisal was approved and processed as my final Rating of Record." Tab 9 also reveals that a Monetary Award was process on January 21, 2004. Please provide a copy (SF 50) of the award you received on January 21, 2004 and explain what the justification for the award was."*

**Response**: Attachment O is a copy of the SF 50 in question.

4.    *"When you submitted your affidavit signed September 13, 2005, you also submitted 16 Exhibits. Among the Exhibits are the following:*

*Exhibit Number 5: People Power Screen Print dated January 25, 2005*
*Exhibit Number 8: People Power Screen Print dated January 31, 2005*
*                    People Power Screen Print dated February 7, 2005*
*Exhibit Number 9: People Power Screen Print dated July 5, 2005 (3 pages)*

*Please identify the source (i.e. the individuals name) of these documents. In order to determine whether the documents are accurate the source of these documents must be contacted to certify the authenticity of the documentation."*

**Response**:

Ms. Jacqueline Gilmore, who is a trained and authorized "Initiator" of the People Power system, accessed my computer personnel file to help me answer the question as to whether OSHA management had or had not processed a performance award for me. Ms. Gilmore is a Program Analyst in the Division of Recordkeeping of my office, the Office of Statistical Analysis. According to Ms. Gilmore, she has authority to initiate a limited number of personnel actions in the People Power system, and only for employees of her office. She does not have authority to initiate actions related to performance appraisals or performance awards. Ms. Gilmore is the first link in the chain for personnel actions. Actions initiated by Ms. Gilmore as an "Initiators" may be approved by a second Initiator, and must be approved by the directorate, and the appropriate authorizing offices, the budget and/or personnel offices. Information from my computer personnel file provided the only official information I had on the status of my performance award. This information also confirmed the processing of my 2004 performance appraisal. OSHA management has never communicated with me regarding the performance award.

5.  *"Please submit any additional notes, physical evidence, or other documentation and provide an explanation as to the relevance of each item in relationship to the issues accepted for this investigation."*

**Response**:

6.  *"Are there any persons who have relevant information? If yes, please provide his or her(s) name(s) and explain what relevant information regarding the issues in this matter you believe s/he may have."*

**Response**:

Throughout my Affidavit, I have identified individuals directly involved in my case, and others whom I contacted for assistance or information. Of the latter group, Clay Taylor, Linda Copening and Jacqueline Gilmore, work in the Francis Perkins Building at 200 Constitution Avenue, N.W., Washington, D.C. 20210. Ms. Copening, however, is currently on sick leave. I will provide relevant contact information for Ms. Copening when it becomes available.

*Complainant Questionnaire*
*Case Nos. 04-05-031, Celeste Davis, Complainant*

I have reviewed this statement, which consists of ▮▮▮▮▮, and hereby solemnly ▮▮▮▮▮▮▮▮ that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential, will become a permanent part of the record of investigation, and may be shown to any necessary party.

_____Edna L. Vance_____    _____October 17, 2005_____
(Signature of Affiant)                    (Date)

Signed before/received by me at (Street and City) _____

on this _____ day of _____, 20_____

_____
(Signature of Investigator)

CRC Form 10
Rev. 3/03

```
Exhibit:    F-1
Page 114 of 114 Pages
```

Attachment ___



**U.S. Department of Labor**                    Office of the Assistant Secretary
                                                for Administration and Management

**SENT BY FEDERAL EXPRESS  7917 4219 1224 and E-mail to**
**lisa.sanders@sanderslawfirm.net**

September 13, 2005

Ms. Edna L. Vance
% Lisa Smith Sanders, Esq.
14452 Old Mill Road, Suite 101
P.O. Box 1429
Upper Marlboro, M.D. 20773

SUBJECT:    Discrimination Complaint Investigation: CRC Case No.: 05-11-077

Dear Ms. Vance:

I have been assigned to complete a supplemental investigation on the above captioned complaint.
Pursuant to **29 CFR §1614.108(c)(1), Investigation of complaints,** I am authorized to require
any employee of a Federal agency to cooperate and to provide testimony. A copy of my Letter
of Authorization has been previously provided. The amended accepted issue for investigation is:

> *Whether the Occupational Safety and Health Administration (OSHA) discriminated against*
> *your in reprisal for prior EEO activity when (1) you did not receive a performance award for*
> *the rating period ending 9/30 2004; (2) your were notified that a revised performance*
> *appraisal, in which the "Ability to Communicate with Staff Element" of your 2003-2004*
> *performance appraisal was modified, would be placed in your personnel folder as the official*
> *rating of record; and (3) on July 27, 2005, you were rated Highly Effective on your*
> *performance appraisal after being placed on a 90-Day Performance Plan.*

wherein claim number 3 has been added.

The purpose of this investigation was previously explained by letter dated July 25, 2005.

To prepare your supplemental affidavit, respond to the interrogatories provided in the enclosed
document. Please note that the interrogatories have also been provided as an attachment by
electronic mail as a Word® document where you may insert your responses directly on the
questionnaire.

Your responses should be as specific as possible, describing circumstances, providing facts (i.e.
dates, names, titles, places, etc.) in as much detail as possible and in a time sensitive chronology.
Please submit available documentary evidence to corroborate your testimony. Please ensure that
you respond to every question.

Also enclosed are the Affidavit Form Cover and Signature Sheets (revised March 2003).

Page 2.

When you are satisfied with your affidavit, you may execute it in the following manner:

1.   Read the front page and **complete** all areas that require your attention.
2.   **Initial** the bottom right-hand corner of **each** page.
3.   Please read the statement on the last page then **sign, date and complete** the appropriate areas.
4.   I will sign the other piece as the investigator upon receipt.

Please return your statement to me **within 15 calendar days** from the date of receipt of this letter.

### IMPORTANT INFORMATION ABOUT SANCTIONS FOR FAILURE TO COOPERATE DURING THE INVESTIGATION

29 CFR Section 1614.108(b) requires that an agency develop an impartial and appropriate factual record upon which to make findings on the claims raised in the written complaint. EEOC Administrative Judges and the Office of Federal Operations have the authority to issue sanctions against an agency for its failure to develop an impartial and appropriate factual record in appropriate circumstances. Moreover, agencies and complainants each have a duty to cooperate with the investigator during the investigation. In §1614.108(c)(3), **a party -- the complainant** as well as the agency -- **may be subject to sanction where it fails to comply with a request of the investigator** for documents, records, comparative data, statistics, **affidavits**, or the attendance of witnesses. The investigator shall make a note in the investigative file concerning the party's failure without good cause shown to comply and the decision maker (Administrative Judge during the hearing process or the agency where the complainant requests a final agency decision) or the Commission on appeal may, in appropriate circumstances:

1.   draw an adverse inference that the requested information, or the testimony of the requested witness, **would have reflected unfavorably on the party refusing to provide the requested information;**
2.   consider the matters to which the requested information or testimony pertains to be established in favor of the opposing party;
3.   exclude other evidence offered by the party failing to produce the requested information or witness;
4.   issue a decision fully or partially in favor of the opposing party; or
5.   take such other actions as it deems appropriate.

An investigator should inform the party from which it seeks documents, records, comparative data, statistics, affidavits, or the attendance of witnesses that a failure to comply with the request may lead to the imposition of sanctions from the decision maker or the Commission on appeal. An investigator may, in an initial request for documents (etc.), advise the party that, absent good cause shown, the party has a duty to respond fully and in a timely fashion to the investigator's request and that a failure to do so may result in sanctions set forth at §1614.108(c)(3). If the investigator properly advised the party that a failure to comply with the request may result in the sanctions set forth at § 1614.108(c)(3), the decision maker or Commission on appeal may impose

Page 3.

such sanctions upon receipt and review of the complaint/appeal file.

I will annotate the report of investigation that without good cause shown to comply you failed to cooperate, if I do not receive a response from you within the above timeframe specified.

I would like to thank you for all your time and cooperation in this matter. If you have any questions, please do not hesitate to call me. I am available at (845) 469-3909.

Sincerely,

Digitally signed by Cherylann F. DeLaurentis
DN: cn=Cherylann F. DeLaurentis, c=US, o=Civil Rights Center,
ou=New York/Boston, email=delaurentis.cheryl@dol.gov
Reason: I am the author of this document
Date: 2005.09.29 14:05:56 -04'00'

CHERYLANN F. DeLAURENTIS
Technical Advisor – Enforcement (Internal)

Enclosures

cc:    Edna Vance (Complainant) – **U.S. DOL E-Mail, Read Receipt Requested**

*Complainant Questionnaire*
*Case Nos. 05-11-077, Edna L. Vance, Complainant*

**COMPLAINANT'S AFFIDAVIT**

I, (name) <u>Edna Lillian Vance</u>

am an <u>X</u> employee of ____ applicant to ___ former employee of the U.S. Department of Labor's:

(Agency) <u>Occupational Saftey & Health Administration</u>

(Office) <u>Directorate of Evaluation and Analysis</u>

(Division) <u>Office of Statistical Analysis</u>

(Branch) <u>Division of Statistical Design, Evaluation and Quality Management</u>

Located in (city and state) <u>Washington, D.C.</u>

In the capacity of (show both your organization title and the classification of your job, if different):

<u>Program Analyst</u>

Grade <u>GS-14</u> between (date) _____ and (date) <u>present</u>

My telephone number during working hours is: <u>(202) 693-1879</u>

I HAVE BEEN ADVISED OF THE FOLLOWING:

I have an obligation to cooperate fully with the investigator who has been assigned to conduct an impartial and appropriate investigation of my complaint of discrimination. Therefore, I must provide a statement for the investigative record that is true and complete to the best of my knowledge and belief and fully addresses the issues accepted for investigation. My statement must be specific with regard to names, dates, places, circumstances and related events, and disclose my firsthand knowledge of any directly related information that is relevant to the issue(s). My statement, along with my Informal Complaint, Counselor's Summary Report, Formal Complaint, and the "issue accepted for investigation" shall serve as the basis of the investigation. While I may voluntarily submit any additional documents or information to the investigator for consideration, it will be the investigator's responsibility to determine what evidence shall actually become part of the investigative report. If there are any documents or facts that substantiate my allegations, I must provide them to the investigator, or make them known to the investigator. I may suggest witnesses to be interviewed by the investigator. However, the investigator will decide which witnesses to interview based on relevant information he or she feels will be furnished.

My statement is made under oath (or affirmation), without a pledge of confidentiality, in accordance with the rules, regulations, policies, and procedures of the Equal Employment Opportunity Commission and the Department of Labor. This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown this statement or relevant portions and be given an opportunity to respond. Agency officials responsible for processing complaints of discrimination will have access to the entire investigative report. If discrimination is found, any employee accused of discrimination will have an opportunity to review a sanitized version of the report. If discrimination is found and disciplinary action is proposed, the employee accused of discrimination will have an opportunity to review the report in its entirety without deletions. Participants in the discrimination complaint process are specifically protected by law and the EEO regulations from any acts of reprisal, discrimination, coercion, harassment, restraint, or inference for their participation in the investigation and other phases of complaint processing.

I have the right to be represented by a person of my choice during presentation of my complaint and preparation of my statement (so long as my choice does not result in a conflict of interest). I have _____ have not _____ chosen a personal representative at this stage of my complaint. In the event I have not chosen a representative but obtain a representative at a later date, I will advise the investigator and the Director of the Civil Rights Center in writing.

I have the right to review my statement prior to signing it, and may make initialed corrections if it is incomplete or inaccurate. I have a right to receive a copy of the signed statement.

Having reviewed the preceding information with the investigator, I solemnly swear or affirm that the statement to follow is true and complete to the best of my knowledge and belief, and fully addresses the issues and allegations raised by me in my EEO complaint.

CRC Form 10
Rev. 3/03

```
Exhibit:    F-1
Page __1__ of ____Pages
```

**Initials:**

I have reviewed this statement, which consists of _____ pages, and hereby solemnly _____ swear _____ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential, will become a permanent part of the record of investigation, and may be shown to any necessary party.

_____    _____
          (Signature of Affiant)              (Date)

Signed before/received by me at (Street and City) _____

on this ____ day of _____, 20_____

_____
          (Signature of Investigator)

CRC Form 10
Rev. 3/03

Exhibit: ____ **F-1** ____
Page ____ of ____ Pages

Initials: _____

--------------------------
Page ____ of

*Complainant Questionnaire*
*Case Nos. 05-11-077, Edna L. Vance, Complainant*

**Pursuant to the letter dated September 13, 2005, from the Civil Rights Center, I have been advised of the following amended issue accepted for investigation**

*Whether the Occupational Safety and Health Administration (OSHA) discriminated against your in reprisal for prior EEO activity when (1) you did not receive a performance award for the rating period ending 9/30 2004; (2) your were notified that a revised performance appraisal, in which the "Ability to Communicate with Staff Element" of your 2003-2004 performance appraisal was modified, would be placed in your personnel folder as the official rating of record; and (3) on July 27, 2005, you were rated Highly Effective on your performance appraisal after being placed on a 90-Day Performance Plan.*

**wherein claim number 3 has been added. The following is my supplemental affidavit intended to address the additional claim.**

**1. Please state for the record your full name.**

**Name:**

**2.      You allege that you were rated Highly Effective on your performance appraisal after being placed on a 90-Day Performance Plan because of your prior EEO activity. Please respond to the following questions. Please be as specific as possible describing circumstances, providing facts (i.e. dates, names, titles, places, etc.) in as much detail as possible and in a time sensitive chronology. Please submit available documentary evidence to corroborate your testimony.**

>       **a.      Exactly *who* provided you with the appraisal at issue?**

**Response:**

>       **b.      *What* exactly occurred or was said?    *What* was the rating period? *What* was the summary rating?  (Provide a copy of any relevant documentation.)**

**Response:**

>       **c.      Do you agree with the basis for the rating?**

**Response:**

>       **d.      If no, for each element rating of your appraisal that you disagree with, what rating do you think you should have received and provide justification**

+-----------------------------+
| **Exhibit:      F-**        |
|                             |
| **Page __2__ of ____Pages** |
+-----------------------------+

**Initials:** _____

Page —of—

*Complainant Questionnaire*
*Case Nos. 05-11-077, Edna L. Vance, Complainant*

(including documentary evidence to corroborate your testimony) as appropriate.

**Response:**

   e.    Exactly w*hen* did you receive the rating at issue?

**Response:**

   f.    How has the rating at issue affected you?  Has your employment and/or job performance been affected in any way?

**Response:**

   g.    What, other reasons, if any, were you given for the rating?

**Response:**

   h.    Are you aware of anyone else in your office that has been similarly rated?

**Response:**

   i.    Who specifically do you believe discriminated against you in this matter and how?

**Response:**

   j.    How do you know that the reason for the rating was because of your previous participation in the EEO process?  Does some connection exist between your protected activity and the incident at issue?

**Response:**

   k.    Did you discuss that you felt that the rating was because of your previous participation in the EEO process with anyone in management?  If yes, with whom and what was their response?

**Response:**

   l.    How do you know the agency was aware of your protected activity when the rating occurred?

| Exhibit: ___F-___ |
| Page _3_ of ___Pages |

Initials: 

Page ___ of ___

*Complainant Questionnaire*
*Case Nos. 05-11-077, Edna L. Vance, Complainant*

**3.    In your affidavit signed September 13, 2005, you state:** *"Initially, I had assumed that OSHA Management made a decision not to give me an award after my appraisal was processed. Much later in June or July 2005, other information entered in my People Power file indicated that OSHA Management canceled my award on December 1, 2004 (Attachment 9), the same day that management decided to reduce my overall performance rating. More important, the award was canceled before my performance appraisal was approved and processed as my final Rating of Record."* **Tab 9 also reveals that a Monetary Award was processed on January 21, 2004. Please provide a copy (SF 50) of the award you received on January 21, 2004 and explain what the justification for the award was.**

**Response:**

**4.    When you submitted your affidavit signed September 13, 2005, you also submitted 16 Exhibits. Among the Exhibits are the following:**

> **Exhibit Number 5:  People Power Screen Print dated January 25, 2005**
> **Exhibit Number 8:  People Power Screen Print dated January 31, 2005**
> **People Power Screen Print dated February 7, 2005**
> **Exhibit Number 9:  People Power Screen Print dated July 5, 2005 (3 pages)**

**Please identify the source (i.e. the individual's name) of these documents. In order to determine whether the documents are accurate the source of these documents must be contacted to certify the authenticity of the documentation.**

**Response:**

**5.    Please submit any additional notes, physical evidence, or other documentation and provide an explanation as to the relevance of each item in relationship to the issues accepted for this investigation.**

**Response:**

**6.    Are there any persons who have relevant information? If yes, please provide his or her name(s) and explain what relevant information regarding the issues in this matter you believe s/he may have.**

**Response:**

Exhibit:     F-
Page  4  of ____ Pages

Initials: _____

Page —of—

*Complainant Questionnaire*
*Case Nos. 05-11-077, Edna L. Vance, Complainant*

**7.    What remedy do you seek in this complaint?  If you are requesting compensatory damages, provide appropriate evidence to support the claim.**

**Response:**

**8.    Is there any other information you would like to present, which is relevant to the issue(s) accepted?**

**Response:**

**9.    Other than the Investigator did you receive any assistance in the preparation of your responses to these questions?  If yes, provide his or her name, title, address and telephone number.**

**Response:**

**Exhibit:    F-**

**Page   5   of ___ Pages**

Page ___ of ___

Attachment ___

Print Form

## Request for Amendment of Claim(s) Accepted for Investigation

Ms. Annabelle T. Lockhart
Civil Rights Center - U.S. DOL
Room N-4123
200 Constitution Avenue, NW
Washington, DC 20210

Dear Ms. Lockhart:

I have recently been advised by Ms. Cherylann F. DeLaurentis, CRO, that I should write to you and request the amendment of my prior formal EEO complaint
CRC Case No(s).:

F05-02-086 filed April 4, 2005

I have enclosed a copy of the new informal complaint form which describes the issues I wish to add (amend) to the existing formal complaint.

I may be reached at the following telephone numbers:

| Days: | 2026931879 | Evenings: | 2028825879 |
|-------|------------|-----------|------------|

| Name | Edna L. Vance |
|------|---------------|

| Address | 6605 16th Street, N.W. |
|---------|------------------------|

| City | Washington | State | D. C. | Zip Code | 20012 |
|------|------------|-------|-------|----------|-------|

I understand that you will acknowledge this amendment request in writing to me and inform me and the assigned investigator of any changes to my formal complaint.

Sincerely,

*Edna L. Vance*

Date August 3, 2005
Enclosure



# Informal
complaint of discrimination

**U.S. Department of Labor**
Office of the Assistant Secretary for Administration and Management
Civil Rights Center

*Note:* Complete this form, sign it, and return it to the EEO Counselor within two (2) work days of your initial contact with the Counselor. See back for additional informal and for help in completing this form.

| | | |
|---|---|---|
| **1a. Name** Edna L. Vance | **2. Job title and grade** | GS-14 Program Analyst |

**1b. Anonymity—** ☐ I would like to remain anonymous.   ☒ I do not care to remain anonymous.

| **3a. Home address/telephone** | **3b. Office address/telephone** |
|---|---|
| 6605 16th Street, N.W. | 200 Constitution Avenue, N.W. |

| City | Washington | State | DC | City | Washington | | State | DC |
|---|---|---|---|---|---|---|---|---|
| **Phone Number** | 2028825879 | **Zip Code** 20012 | | **Phone Number** | 2026931879 | **Zip Code** 20210 | | |

**5. Bases of your complaint** (Check as appropriate and specify where a blank is provided):

☐ race    ☐ religion    ☐ sex

☐ color    ☐ age/date of birth    ☐ sexual orientation*

☐ national origin    ☐ disability    specify

☒ reprisal    I filed an Informal EEO Complaint on 6/10/98, and a Formal EEO Complaint on 9/09/98

*Please specify the prior EEO acitivity in which you were involved and the date.*
*Protected by Executive Order 13087, not by Federal statute. Claimants on the basis may request a final decision, but have no hearing or appeal rights.*

**6. Specify the action(s) that gave rise to this complaint.** (Please use the back of this page if needed, and check here ☒ if continued on back.)

**Date(s) and Specific action(s)**

The following statement represents additional allegations and is an amendment to the attached Informal Complaint filed 2/25/05.

On July 27, 2005, in violation of regulations and procedures, OSHA management rated my performance against the 90-Performance Plan. This adverse performance action represents an act of continuing harassment and retaliation against me

**7. Please specify remedy(ies) you believe will resolve your complaint.**

**8. Person you first contacted on this matter:** ☐ an EEO Counselor    ☐ a Civil Rights Officer    ☐ the National Coordinator of Counselors

| **9. Date of Contact** See original complaint | **10. Person's name and telephone** | See original complaint. |
|---|---|---|

| **11. Have you filed a complaint on this same matter with:** | If yes, date(s) of other filing(s) | **12. Representative's name, address and telephone** |
|---|---|---|
| ☐ Administrative grievance System? | | |
| ☐ A union  (specify) | | |
| ☐ Merit Systems Protection Board (MSPB)? | | |

| **Signature** | *Edna L. Vance* | **Date** | *august 3, 2005* |
|---|---|---|---|

**CRC use only**   Date received By CRC Staff       Issue       IM#

CRC-1, revised 11/99

Page ____ of ____

## Who may file an informal complaint?

Any DOL employee or applicant who believes that he or she has been discriminated against in an employment matter because of race, color, religion, sex (including sexual harassment), age (40 and above), national origin, disability (mental or physical), or sexual orientation must contact an EEO Counselor, Civil Rights Officer, or National Coordinator of Counselors *within 45 calendar days* of the date of the alleged discriminatory action or of the effective date of a personnel action, to try to resolve the matter.

Anyone who believes that he or she has been or is being harassed because of the filing of an EEO complaint or participation in the EEO complaint process may file a complaint of reprisal with an EEO Counselor within 45 calendar days of the alleged action.

## What happens next?

The EEO Counselor has 30 calendar days to look into the matter to attempt to resolve it, or you may request mediation to attempt to resolve it. If resolution is not possible, you will be given notice of your right to file a formal complaint.

Only allegations presented for EEO counseling will be considered for investigation at the formal stage. All persons must use this process before proceeding to the formal complaint stage. Persons who wish to file a complaint under the Age Discrimination in Employment Act and/or the Equal Pay Act may bypass this process and file a civil action in U.S. District Court.

---

**6, *continued*.** Use this space to continue #6 from the face of this form.

| Date(s) | Specific action(s) |
|---|---|
| Continued. | |
| | because of my past participation in protected activity and because of my unwillingness to drop my current Civil Action. |

*Definitions*

| | |
|---|---|
| race | Racial group, for example: |
| | American Indian or Alaska Native: A person having origins in any of the original peoples of North, South, or Central America and who maintains tribal affiliation or community attachment. |
| | Asian: A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian subcontinent, including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand and Vietnam. |
| | Black or African American: A person having origins in any of the black racial groups of Africa. |
| | Native Hawaiian or other Pacific Islander: A person having origins in any of the original peoples of Hawaii, Guam, Samoa, or other Pacific Islands. |
| | White: A person having origins in any of the original peoples of Europe, the Middle East or North Africa. |
| color | one's skin color or complexion, for example, light-skinned or -complexion, dark-skinned or -complexion. |
| national origin | An individual's (or his or her ancestor's) place of origin; or having the physical, cultural, or linguistic characteristics of a national origin group. For example: Egyptian, Iroquois Nation, Hispanic. (Hispanic, Latino, or Spanish origin refers to persons of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin, regardless of race.) |
| religion | One's religious practice or belief. Examples: Baptist, Catholic, Hindu, Jewish, Moslem. |
| age | 40 and above |
| disability | A physical or mental impairment that substantially limits one or more of a person's major life activities. |
| sex | Male or female. |
| reprisal | Reprisal for filing an EEO complaint, participating in the EEO process, or opposing a discriminatory employment practice. |

CRC-1, revised 11/99

Page ____ of ____

# Informal
**complaint of discrimination**



**U.S. Department of Labor**
Office of the Assistant Secretary for Administration and Management
Civil Rights Center

*Note: Complete this form, sign it, and return it to the EEO Counselor within 2 work days of your initial contact with the Counselor.*
*See back for additional information and for help in completing this form.*

| | |
|---|---|
| **1a. Name** | **2. Job title and grade** |
| Edna L. Vance | Program Analyst, GS-14 |

**1b. Anonymity—** ☐ I would like to remain anonymous.  ☒ I do not care to remain anonymous.

| **3a. Home address** | **3b. Office address** | **4. Telephone, including area code, extension** |
|---|---|---|
| 6605 16th Street, NW Washington, D.C. 20012 | 200 Constitution Ave., NW FPB, N3507, Wash., DC 20210 | home 202-882-5879 office 202-693-1879 |

**5. Bases of your complaint** (Check as appropriate and specify where a blank is provided):

☐ race _____  ☐ religion _____  ☐ sex _____

☐ color _____  ☐ age _____  ☐ sexual orientation* _____

☐ national origin _____  ☐ disability _____

☒☒ reprisal  I filed an Informal EEO Complaint on 06/10/98, and a Formal EEO Complaint on 09/09/98
*Please specify the prior EEO activity in which you were involved and the date.*

*\*Protected by Executive Order, not by federal statute. Claimants on this basis may request a final decision, but have no hearing or appeal rights.*

**6. Specify the action(s) that gave rise to this complaint.** (Please use the back of this page if needed, and check here ☒ if continued on back.)
Date(s)    Specific action(s)
This is a complaint of continuing retaliation.
On February 10, 2005, in violation of procedures, OSHA management put me on a 90-day performance plan because I did not sign my Fiscal Year 2004 performance appraisal, an appraisal that was due in October 2004. In December 2004, I was on approved 'use or lose' leave. Management took this adverse action even though they had already finalized the appraisal in question, accepted it as my 'rating of record,' and established my next review date as 09/30/05. In further retaliation, management denied me a performance award.

**7. Please specify remedy(ies) you believe will resolve your complaint.**
1. Pay an immediate performance award with interest based on the current appraisal of record.
2. Finalize the December 1, 2004 appraisal with the highest performance rating.
3. Remove the current rating from my file and replace it with the December 1, 2004 appraisal.
4. Pay a performance award with interest to equal the difference between the ratings of the two appraisals.
5. Put in place elements and standards agreed to by both parties for 2005 for the 9/30/05 review.

**8. Person you first contacted on this matter:** ☐ an EEO Counselor  ☐ a Civil Rights Officer  ☒ the National Coordinator of Counselors

**9. Date of contact** 02/07/05  **10. Person's name and telephone**

**11. Have you filed a complaint on this same matter with:**  If yes, date(s) of other filing(s)
☐ Administrative grievance system? _____
☐ A union (specify _____)? _____
☐ Merit Systems Protection Board (MSPB)? _____

| **12a. Representative's name** | **12b. Representative's address** | **12c. Representative's telephone** |
|---|---|---|
| | | |

**Date** 02/25/05   **Signature** *Edna L. Vance*

CRC use only   Date received _____  Issue _____  IM# _____  Page ___ of ___



# PERFORMANCE MANAGEMENT PLAN
# FOR NON-MANAGERS AND
# NON-SUPERVISORS

## General Information

Name: _Edna Vance_____

Organization: ____OSHA/DEA/Office of Statistical Analysis_____

Appraisal Period: ~~03/07/2005~~ 3/1/05 To ____~~05/09/2005~~ 6/1/05

## Establishment of the Performance Management Plan

We have discussed this plan; written comments have _____ have not _____ been attached.

Employee: _____    Date: _____

Rating Official: _____    Date: _3/10/05_

Reviewing Official: _____    Date: _2/24/05_

Employee declined to sign new ~~standards~~ via note dated 2/24/05. RWP
↗ Performance management plan RWP

## Mid-Term Progress Review Certification

The mid-term progress review has been conducted.

Employee: _____    Date: _____

Rating Official: _____    Date: _____

## Performance Appraisal and Rating

|   |   |   |
|---|---|---|
|   | **Exemplary** | Exceed standards for all elements |
| ✓ | **Highly Effective** | Exceed standards for 50% or more elements but not all; meet standards for all other elements |
|   | **Effective** | Meet standards for all elements and may exceed standards for less than 50% of elements |
|   | **Minimally Satisfactory** | Need to improve performance for one or more elements |
|   | **Unsatisfactory** | Fail to meet standards on one or more elements |

We have discussed this appraisal; written comments have _X_ have not ___ been attached.
(not) elv

Employee: _____    Date: _____

Rating Official: _____    Date: _7/20/05_

Reviewing Official: _____    Date: _7/27/05_

Employee declined to sign appraisal and provided attached comments
RWP 7/27/05

_____

Page ___ of ___

### Performance Summary

For each element, use an "X" to indicate the appropriate rating. Element ratings:  E = Exceed, M = Meet, NI = Need to Improve, F = Fail

| ELEMENT | ELEMENT RATING | | | |
|---------|:---:|:---:|:---:|:---:|
| | E | M | NI | F |
| Result 1 | X | | | |
| Result 2 | | x | | |
| Result 3 | X | | | |
| Result 4 | X | | - | |
| Result 5 | | x | | |
| Result 6 | | | | |
| Result 7 | | | | |
| Result 8 | | | | |

**PURPOSE OF APPRAISAL:** _____ **Interim Rating** _____ **Rating of Record**

## CONSIDERATION GIVEN TO OTHER RATINGS IN RATING OF RECORD:

Any written performance information (including interim ratings and performance information on details or temporary reassignments/promotions) since the last annual rating of record will be taken into account in this rating of record.   If these interim performance ratings or information impact the overall rating of record, explain fully in this space.

### Other Significant Accomplishments

Page ___ of ___

DL-1-384

| Elements | |
|---|---|

**Element 1**:  Prepare comprehensive data analysis reports for government and public distribution and use on selected industries, topics and/or request from customers.

**Performance Standard:**   Performance is acceptable when final products are produced in a user friendly, organized manner; containing accurate and useful information.

**Narrative:**   Ms. Vance developed a comprehensive data analysis report on immigrant and Hispanic fatality investigations.  Ms. Vance's user friendly report contains useful information that will assist the agency's enforcement directorate as well as oits field units to better target their limited resources.

Rating:
- [x] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

**Element 2:**  Develop plans of action to address key issues related to completion of assignments. Prepare observations and conclusions for use by intra-agency staff, inter-agency staff and customers.

**Performance Standard:**    Performance is acceptable when plans and observations are accurate and address the stated objective.

**Narrative:**   (None)

Rating:
- [ ] Exceeds described level of performance (narrative required)
- [x] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

Page ___ of ___

DL-1-384
7/2003

## Elements

**Element: 3:**  Develop studies and/or reports related to technical issues of selected topics. Communicate with necessary experts, consultants, advisors or contractors to resolve issues.

**Performance Standard**:  Performance is acceptable when assignments are carried out to meet established standards for accuracy, thoroughness and timeliness.

**Narrative:**  Ms. Vance developed the first draft of the OSHA Recordkeeping Handbook.  The draft handbook is comprehensive, intended for the public, incorporates a user-friendly format, and reflects well as a major milestone for the Agency.  Ms. Vance also supervised the work of a junior analyst during this assignment.

Rating:
- [X] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

**Element: 4:**   Ability to research and develop material in comparable report format for use by inter and intra agency.  Able to communicate information expressing technical accuracy and maintaining a level of understanding for all interested parties.  Ability to work cooperatively with other inter and intra agency staff.

**Performance Standard:**   Performance is acceptable when information communicated is accurate, understandable and organized and feedback is positive.

**Narrative:**   Using diverse, comparable, and expansive sources of information Ms. Vance developed user-friendly products for the Agency and the public.  Two primary products were a compilation of OSHA Fatality Investigations of Immigrants and Hispanics for the time period FY 2002 to FY 2004, and a draft OSHA Recordkeeping Handbook.  The final Recordkeeping Handbook is expected to be used by the private sector as well as federal agencies.  The Immigrant and Hispanic report is expected to assist the Agency with better targeting and potentially expanded programs for the immigrant and Hispanic communities.

Rating:
- [X] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

Page ___ of ___
DL-1-384
7/2003

## Elements

**Element 5:**   Ability to communicate with staff of all levels information that is accurate and user friendly.

**Performance Standard:**    Performance is acceptable when accurate analysis and reports of findings are made available in a timely fashion.

**Narrative:**   (None)

Rating:
- [ ] Exceeds described level of performance (narrative required)
- [x] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

**Element 6:**

**Performance Standard:**

**Narrative:**

Rating:
- [ ] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

Page ___ of ___

DL-1-384
7/2003

July 26, 2005

## **Written Comments:**

<u>I [Edna Vance] am attaching the following written comments to the Performance Appraisal and Rating I was presented with on July 20, 2005 for the Appraisal Period of March 1, 2005 to June 1, 2005.</u>

**Comment**s:  I will address my concerns related to the Performance Appraisal I received on July 20, 2005, through appropriate Department of Labor and judicial procedures.  On page 1 of the Performance Appraisal, I noted that the **"The mid-term progress review has been conducted."** section was not completed because no mid-term review was conducted, and under **"Performance Appraisal and Rating**, no rating level was checked.  I also noted that, on page 2, the **"Purpose of Appraisal: _____ Interim Rating _____ Rating of Record,"** section was also not completed

Please note that I have also attached to these comments a copy of the written comments I provided to my supervisor when he presented me with the Performance Management Plan (page 1) that he signed and dated February 10, 2005.

*Edna L. Vance    July 26, 2005*

_____

Edna L. Vance

Attachment:  Memorandum dated February 10, 2005, to Joe DuBois related
            to 90-day elements and standards.

cc:  Linda Copening
     Lisa Sanders

Page —o f—

## Vance, Edna - OSHA

**From:** Vance, Edna - OSHA
**Sent:** Thursday, February 10, 2005 3:13 PM
**To:** DuBois, Joe - OSHA
**Cc:** Vance, Edna - OSHA; Copening, Linda M - ESA
**Subject:** 90-day Elements and Standards

Joe DuBois,

This is to confirm that on January 25, 2005, you provided me with Performance Elements and Standards for 90 days. On that day (January 25th), you stated that the reason for putting me under 90-day elements and standards was because I had not signed my previous performance appraisal. Today (02/10/05) you provided me with revised elements and standards for 90 days for the same reason, as stated by you.

Edna L. Vance

Page 1 of



# PERFORMANCE MANAGEMENT PLAN FOR NON-MANAGERS AND NON-SUPERVISORS

Attachment ___

## General Information

Name: _Edna Vance_____

Organization: _____OSHA/DEA/Office of Statistical Analysis_____

Appraisal Period: ~~03/07/2005~~ 3/1/05 To ~~05/09/2005~~ 6/1/05

## Establishment of the Performance Management Plan

We have discussed this plan; written comments have _____ have not _____ been attached.

Employee: _____  Date: _____

Rating Official: _____  Date: 2/10/05

Reviewing Official: _____  Date: 2/24/05

Employee declined to sign new ~~standards~~ via note dated 2/24/05. RWP

→ Performance management plan RWP

## Mid-Term Progress Review Certification

The mid-term progress review has been conducted.

Employee: _____  Date: _____

Rating Official: _____  Date: _____

## Performance Appraisal and Rating

|   |   |   |
|---|---|---|
|   | **Exemplary** | Exceed standards for all elements |
| ✓ | **Highly Effective** | Exceed standards for 50% or more elements but not all; meet standards for all other elements |
|   | **Effective** | Meet standards for all elements and may exceed standards for less than 50% of elements |
|   | **Minimally Satisfactory** | Need to improve performance for one or more elements |
|   | **Unsatisfactory** | Fail to meet standards on one or more elements |

We have discussed this appraisal; written comments have X ev have not ___ been attached.
(not) ev

Employee: _____  Date: _____

Rating Official: _____  Date: 7/25/05

Reviewing Official: _____  Date: 7/27/05

Employee declined to sign appraisal and provided attached comments
RWP 7/27/05

_____

Page ___ of ___

### Performance Summary

For each element, use an "X" to indicate the appropriate rating. Element ratings:  E = Exceed, M = Meet, NI = Need to Improve, F = Fail

| ELEMENT | ELEMENT RATING | | | |
|---|---|---|---|---|
| | E | M | NI | F |
| Result 1 | X | | | |
| Result 2 | | X | | |
| Result 3 | X | | | |
| Result 4 | X | | | |
| Result 5 | | X | | |
| Result 6 | | | | |
| Result 7 | | | | |
| Result 8 | | | | |

**PURPOSE OF APPRAISAL:**     _____ Interim Rating     _____ Rating of Record

**CONSIDERATION GIVEN TO OTHER RATINGS IN RATING OF RECORD:**
Any written performance information (including interim ratings and performance information on details or temporary reassignments/promotions) since the last annual rating of record will be taken into account in this rating of record.   If these interim performance ratings or information impact the overall rating of record, explain fully in this space.

### Other Significant Accomplishments

Page — of —

DL-1-384

## Elements

**Element 1**:  Prepare comprehensive data analysis reports for government and public distribution and use on selected industries, topics and/or request from customers.

---

**Performance Standard:**   Performance is acceptable when final products are produced in a user friendly, organized manner; containing accurate and useful information.

**Narrative:**    Ms. Vance developed a comprehensive data analysis report on immigrant and Hispanic fatality investigations.  Ms. Vance's user friendly report contains useful information that will assist the agency's enforcement directorate as well as oits field units to better target their limited resources.

Rating:
- [x] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

**Element 2:**  Develop plans of action to address key issues related to completion of assignments. Prepare observations and conclusions for use by intra-agency staff, inter-agency staff and customers.

**Performance Standard:**    Performance is acceptable when plans and observations are accurate and address the stated objective.

**Narrative:**   (None)

Rating:
- [ ] Exceeds described level of performance (narrative required)
- [x] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

DL-1-384
7/2003

| **Elements** | |
|---|---|

**Element: 3:** Develop studies and/or reports related to technical issues of selected topics. Communicate with necessary experts, consultants, advisors or contractors to resolve issues.

**Performance Standard:** Performance is acceptable when assignments are carried out to meet established standards for accuracy, thoroughness and timeliness.

**Narrative:** Ms. Vance developed the first draft of the OSHA Recordkeeping Handbook. The draft handbook is comprehensive, intended for the public, incorporates a user-friendly format, and reflects well as a major milestone for the Agency. Ms. Vance also supervised the work of a junior analyst during this assignment.

Rating:
- [X] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

**Element: 4:** Ability to research and develop material in comparable report format for use by inter and intra agency. Able to communicate information expressing technical accuracy and maintaining a level of understanding for all interested parties. Ability to work cooperatively with other inter and intra agency staff.

**Performance Standard:** Performance is acceptable when information communicated is accurate, understandable and organized and feedback is positive.

**Narrative:** Using diverse, comparable, and expansive sources of information Ms. Vance developed user-friendly products for the Agency and the public. Two primary products were a compilation of OSHA Fatality Investigations of Immigrants and Hispanics for the time period FY 2002 to FY 2004, and a draft OSHA Recordkeeping Handbook. The final Recordkeeping Handbook is expected to be used by the private sector as well as federal agencies. The Immigrant and Hispanic report is expected to assist the Agency with better targeting and potentially expanded programs for the immigrant and Hispanic communities.

Rating:
- [X] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

4

## Elements

**Element 5:**  Ability to communicate with staff of all levels information that is accurate and user friendly.

**Performance Standard:**    Performance is acceptable when accurate analysis and reports of findings are made available in a timely fashion.

**Narrative:**  (None)

Rating:
- [ ] Exceeds described level of performance (narrative required)
- [x] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

**Element 6:**

**Performance Standard:**

**Narrative:**

Rating:
- [ ] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

5

DL-1-384
7/2003

July 26, 2005

## Written Comments:

I [Edna Vance] am attaching the following written comments to the Performance Appraisal and Rating I was presented with on July 20, 2005 for the Appraisal Period of March 1, 2005 to June 1, 2005.

**Comment**s:  I will address my concerns related to the Performance Appraisal I received on July 20, 2005, through appropriate Department of Labor and judicial procedures.  On page 1 of the Performance Appraisal, I noted that the **"The mid-term progress review has been conducted."** section was not completed because no mid-term review was conducted, and under **"Performance Appraisal and Rating**, no rating level was checked.  I also noted that, on page 2, the **"Purpose of Appraisal: _____ Interim Rating _____ Rating of Record,"** section was also not completed

Please note that I have also attached to these comments a copy of the written comments I provided to my supervisor when he presented me with the Performance Management Plan (page 1) that he signed and dated February 10, 2005.

*Edna L. Vance   July 26, 2005*

_____

Edna L. Vance

Attachment:  Memorandum dated February 10, 2005, to Joe DuBois related
              to 90-day elements and standards.

cc: Linda Copening
    Lisa Sanders

Page ___ of ___

## Vance, Edna - OSHA

**From:** Vance, Edna - OSHA
**Sent:** Thursday, February 10, 2005 3:13 PM
**To:** DuBois, Joe - OSHA
**Cc:** Vance, Edna - OSHA; Copening, Linda M - ESA
**Subject:** 90-day Elements and Standards

Joe DuBois,

This is to confirm that on January 25, 2005, you provided me with Performance Elements and Standards for 90 days. On that day (January 25th), you stated that the reason for putting me under 90-day elements and standards was because I had not signed my previous performance appraisal. Today (02/10/05) you provided me with revised elements and standards for 90 days for the same reason, as stated by you.

Edna L. Vance

Page 1 of 1

# DIRECTORATE OF EVALUATION AND ANALYSIS (DEA)

**PHONE: 693-2400    FAX: 693-1641    Conference Room – 693-1923**
**ROOM #N-3641**

*Keith Goddard, Director – 693-1935*
*Bob Pitulej, Deputy Director – 693-1834 / Frank Frodyma, Deputy Director – 693-1914*
*Cheryl P. Feeling, Secretary – 693-1940*
*Nicole Jalloh\*, Clerical Assistant – 693-2354*

---

### Office of Program Review – John Lewis, Director, 693-1922  Room N-3641

| | |
|---|---|
| Jacquelyn Gray – 693-1944 | Candy March – 693-1928 |
| Phil Beck – 693-1931 | Clay Taylor – 693-1929 |
| Deborah Crawford – 693-1932 | Geraldine Harris – 693-1930 |
| Eleanor Gill – 693 1937 | Lydia Kwawu\* – 693-1938 |
| Elaine Papp – 693-1991 | Rene Lewis\* – 693-1945 |
| Julia Pesak – 693-1936 | |

---

### Office of Evaluations and Audit Analysis - John Smith, Director 693-2225  Room N-3641

| | |
|---|---|
| Herbert Washington – 404-562-2251 (Atlanta) | Edward Stern – 693-1873 |
| Rex Tingle – 693-1926 | Annie Strawder – 693-1842 |
| Catherine Sutter – 693-1933 | Debbie Green – 693-2313 (CCU – N3626) |
| Wil Epps – 693-1857 | Jean Walker- 693- 2310 (CCU – N-3626) |
| Abdiaziz Yassin – 693-2042 | Katesha Gordon – 693-2312 (CCU – N-3626) |
| Joanna Friedrich – 693-1939 | Erma Freeman – 693-1918 (CCU –N-3626) |

---

### Office of Regulatory Analysis  - Robert (Bob) Burt, Director 693-1952  Room N-3627

| | |
|---|---|
| Jens Karl Svenson – 693-1964 | Abu Sanusi – 693-2512 |
| Robert Blicksilver – 693-1947 | Adrian Corsey – 693-1958 |
| David Hershfield – 693-1951 | Kathleen Martinez – 693-1953 |
| Thomas Mockler – 693-1948 | Deloris Holliday – 693-1956 |
| Paul Bolon – 693-1960 | Deborah Outland – 693-1917 |
| | Tamara Mairena\* – 693-2262 |

---

### Office of Statistical Analysis – Joseph (Joe) DuBois, Director (202) 693-1875  Room N-3507

| | |
|---|---|
| Bob Whitmore – 693-1876 | Mark Kitzmiller – 693-2291 |
| Dave Schmidt – 693-1886 | Bonita Horton – 693-1883 |
| Wendy Mellinger – 693-1874 | Ilma Rosskopf – 693-1887 |
| Ethel Jackson – 693-1871 | Miriam Schoenbaum – 693-1841 |
| Edna Vance – 693-1879 | Linda Carter Townsend – 693-1885 |
| Valerie Struve – 693-1882 | Shirley Lashley – 693-1878 |
| Jacqueline Gilmore – 693-1889 | Linda Harrell – 693-1872 |

**Fax #:  693-1631**

---

## FREQUENTLY USED NUMBERS

Assistant Secretary John L. Henshaw – 693-2000 / 693-2601 - fax
OSHA HELP DESK: 693-2424

| | | | |
|---|---|---|---|
| Compliance | 693-2100 | Admin Services | 693-1600 |
| Construction | 693-2345 | OMDS | 693-1700 |
| Fed. State Programs | 693-2200 | Tech Support | 693-2300 |
| Health Standards | 693-1950 | Information Tech | 693-1818 |
| Safety | 693-2222 | Public Affairs | 693-1999 |
| Statistics | 693-1702 | Congressional Affairs | 693-4600 |

*Updated 11-23-04*

Page ___ of ___

| Performance Standards and Rating for Employees in the Local 12 Bargaining Unit | U. S. Department of Labor<br>Office of the Assistant Secretary for Administration and Management | Attachment ____ |
|---|---|---|

**Instructions:** Sections 1 through 6 and the first two parts of Section 8 will be completed by the supervisor after coordination with the employee, at the beginning of the appraisal period. Section 7 and the remainder of Section 8 and Sections 9 and 10, as appropriate, will be completed at the end of the appraisal period.

| 1. Name of Employee<br><br>EDNA L. VANCE<br><br>2. Title and Grade<br>Program Analyst -- GS-14 | 3. Organizational Location<br>OSHA/DEA/Office of Statistical Analysis<br>Room N-3507<br>200 Constitution Avenue  N. W.<br>Washington DC  20210 |
|---|---|
| 4. Rating Due Date<br>10/01/2004 | 5. Title of Pay Deciding Official |

**6. Establishment of Critical/Noncritical Elements and Performance Standards**

a. Rater Certification After Discussion With the Employee

_____    _____
Signature of Rater                                                                        Date

b. Employee Response

My supervisor ☐ has, ☐ has not discussed these standards and critical elements with me.

I ☐ have ☐ have not included comments on these performance standards.

_____    _____
Signature of Employee                                                                 Date

c. Higher Level Review

☐ These elements and standards have been reviewed and are approved.

d. Employee Receipt

_____    _____    _____    _____
Signature of Reviewer                          Date           Signature of Employee                          Date

**7. Summary Performance Rating**

a. Appraisal Period

From  10/01/2003  To  09/30/2004

b. Type of Summary Rating (See explanation in item 9.)

☒ Rating of Record*     ☐ Interim Rating

c. Summary Performance Rating (Check the definition which describes the employee's overall performance during the rating period and sign below.

☐ **Outstanding Performance** - Performance exceeds the described level in the performance standards for all critical elements, and for 50 percent or more of the other elements. Performance does not fall below the standard for any element of the job.

☒ **Highly Effective** - Performance exceeds the described level in the performance standards for 50 percent or more of the critical elements. Performance does not fall below the standard for any element.

☐ **Fully Successful** - Performance meets the described level in the performance standards for all critical elements.

☐ **Minimally Satisfactory** - Performance in one or more critical elements is slightly below standard.

☐ **Unacceptable Performance** - Performance fails to meet the described level in the performance standard for one or more critical elements of the job.

* This annual rating of record ☐ does ☐ does not include other performance information. If it does, see item 9 for explanation.

** If there is only one non-critical element, the percentage requirement does not apply.

d.

_____    _____
Signature of Rater                                                                        Date

e. Employee Response

My supervisor ☐ has, ☐ has not discussed these standards and critical elements with me.     ☐ I have ☐ have not included written comments

_____    _____
Signature of Employee                                                                 Date

f. Higher Level Reviewer

☐ I have reviewed and concur with this rating.

g. Employee Receipt

My signature on this form does not constitute agreement with the rating nor does it indicate that I will not grieve the rating.

_____    _____    _____    _____
Signature of Reviewer                          Date           Signature of Employee                          Date

Page ____ of ____

8.    **Performance Standards and Rating**

(See DLS Appendix B to FPM 430 and Article 12 of the DOL/Local 12 Collective Bargaining Agreement for instructions on developing job elements, performance standards and making appraisals.)

Each Performance Standard and Rating will be numbered consecutively and consist of the following:

A.    Job Element: List the major objectives or responsibilities of the job.

B.    Performance Standards: For each job element, describe the results expected when performance is at a satisfactory level in terms of quality, timeliness, and quantity as appropriate. The methods of measurement should also be included, when practicable.

C.    Element Rating and Narrative: (1) Check the appropriate space as to whether the employee "Exceeds (E)," "Meets (M)," "Needs to improve (NI)," or "Fails to Meet (FM)" the standards for the element and (2) give a brief narrative description of results achieved, except when the element is rated at meets level. (A narrative is optional when the employee is rated, "Meets.") Do not rate the employee on any elements on which he/she has not been assigned work and given the opportunity to perform.

---

(1)    **(Check One)    [ X ] Critical    [ ] Noncritical**

**A. ELEMENT**:

Prepare comprehensive data analysis reports for government and public distribution and use on selected industries, topics and/or request from customers.

**B. PERFORMANCE STANDARD:**

Performance is acceptable when final products are produced in a user friendly, organized manner; containing accurate and useful information.

**C. ELEMENT RATING AND NARRATIVE:    [ √ ]E    [ ]M    [ ]NI    [ ]FM**

Ms. Vance developed a number of significant data reports. Using OSHA Data Initiative (ODI) data and other supplemental information, Ms. Vance prepared nine (9) OSHA Regional reports focusing on employer-reported injury/illness rates and employment numbers in 2001. She also produced a Region III prototype report that focused on different employer-reported rates and employment numbers in 2002. The reports were well organized to highlight and support the key issues and arguments. The report information was accurate, was shared with executives and managers, and was used to support major policy changes in the way 'site specific targeting' and 'ODI audits and verifications' are determined.

(2)    (Check One)    [ X ] Critical    [ ] Noncritical

**A. ELEMENT:**

Develop plans of action to address key issues related to completion of assignments. Prepare observations and conclusions for use by intra-agency staff, inter-agency staff and customers.

**B. PERFORMANCE STANDARD:**

Performance is acceptable when plans and observations are accurate and address the stated objective.

**C. ELEMENT RATING AND NARRATIVE:**    [ ✓ ]E  [ ]M  [ ]NI  [ ]FM

Ms. Vance met with OSHA managers and program and data experts before and during the development and production of the ODI data reports, the ODI/VPP slide presentation, and the recordkeeping handbook. She identified, discussed and resolved many key issues related to the content, accuracy, organization, and usefulness of the materials. In developing the ODI data reports, Ms. Vance researched and recommended a secondary source of information that provided the industry name beside each SIC code, and substituted the OSHA Area Office name for the 2-digit identifier. Based on a review and assessment of ODI and VPP data, Ms. Vance developed a decision presentation of graphics and summary tables for an Assistant Secretary briefing. The presentation illustrated, among other things, an opportunity to substantially increase the number of VPP sites. The enormous size of the handbook required special planning and organization. Ms. Vance was able to take different material in different formats and blend them into one coherent and logical document.

(3)    (Check One)    [ X ] Critical    [ ] Noncritical

**A. ELEMENT:**

Develop studies and/or reports related to technical issues of selected topics. Communicate with necessary experts, consultants, advisors or contractors to resolve issues.

**B. PERFORMANCE STANDARD:**

Performance is acceptable when assignments are carried out to meet established standards for accuracy, thoroughness and timeliness.

**C. ELEMENT RATING AND NARRATIVE:**    [ ]E  [ ✓ ]M  [ ]NI  [ ]FM

Ms. Vance completed a major milestone for OSHA, the development of the OSHA Recordkeeping Handbook. This handbook will replace a similar publication issued in 1986. The new handbook is very comprehensive, incorporating information from Agency Federal Register notices, compliance directives and the web. It will be distributed in OSHA and to the public via the Internet, on CD and in hard copy.

Ms. Vance completed the first draft of the handbook in record breaking time. She worked well under a tight deadline and a high priority issued by the Assistant Secretary. She demonstrated initiative, creativity, great organizational skills and attention to detail. The 'user-friendly' format organizes information by regulatory section and will facilitate ease in identifying pertinent facts and issues related to each specific regulatory requirement. She supervised the work of a junior analyst.

used by OSHA, private sector employers, Federal agencies, safety and health professionals, and others interested in identify information on the requirements for recording and reporting occupational injuries and illnesses.

Because of the potentially wide use of this document, accuracy and consistency have been key issues, and, Ms. Vance responded, exercising great care and diligence in verifying and validating represented information. She conducted a detailed review of all reference documents, noted actual and potential problems, discussed these issues when warranted, and made adjustments and corrections as directed.

---

**(5)     (Check One)    [ ] Critical      [ X ] Noncritical**

## A. ELEMENT:

Ability to communicate with staff of all levels information that is accurate and user friendly.

## B. PERFORMANCE STANDARD:

Performance is acceptable when accurate analysis and reports of findings are made available in a timely fashion.

## C. ELEMENT RATING AND NARRATIVE:      [ ✓ ]E   [ ]M   [ ]NI   [ ]FM

Ms Vance provided briefing materials for and briefed the OSTAT Directors on proposed project's and how they may impact other staff, projects and OSHA offices. Ms Vance continued to display excellent coordination skills required to develop and monitor projects which fulfill OSHA's outreach goals. Her ability to communicate with co-workers, federal and non-federal staff at all levels is evident in the cooperation received by various offices and agencies.

Ms Vance continued to field significant questions about the content of her Agency-wide report on logging fatalities investigated by Federal and State OSHA in FY 1996 and FY 1997. She responded to request for copies to be used in training and in discussions in the field in areas where logging is a major industry.

------------------------------------

9.  **Consideration Given Other Ratings in Rating of Record:** Ratings of record are prepared annually. Any written performance information (including interim ratings and performance information on details or temporary reassignments/promotions) since the last rating of record in the current appraisal year will be taken into account in this rating of record.

In considering this other performance information, take into consideration such factors as level of performance, nature and level of duties and responsibilities of the assignments, importance to accomplishment of organizational goals, and length of time spent. If these interim performance ratings or information change the overall rating of record, explain fully in this space.

10. **Other Significant Accomplishments:** Any Significant work accomplishments not covered by an element/performance standard under Item 8 should be described on an attachment.

Page ____ of ____

Performance Standards and Rating for
Employees in the Local 12 Bargaining
Unit

**U. S. Department of Labor**
Office of the Assistant Secretary for
Administration and Management

Attachment ___

Instructions: Sections 1 through 6 and the first two parts of Section 8 will be completed by the supervisor after coordination with the employee, at the beginning of the appraisal period. Section 7 and the remainder of Section 8 and Sections 9 and 10, as appropriate, will be completed at the end of the appraisal period.

| 1. Name of Employee  EDNA L. VANCE | 3. Organizational Location  U. S. Department of Labor - OSHA  Office of Statistics, Room N-3507  200 Constitution Avenue  N. W.  Washington DC  20210 |
|---|---|
| 2. Title and Grade         Program Analyst -- GS-14 | |
| 4. Rating Due Date  02/30/2001      2-28-01 | 5. Title of Pay Deciding Official    Division, IT |

**6. Establishment of Critical/Noncritical Elements and Performance Standards**

a. Rater Certification After Discussion With The Employee

Signature of Rater _____ 10/18/00      Date

b. Employee Response

My supervisor [ ] has, [ ] has not discussed these standards and critical elements with me.

i [ ] have [ ] have not included comments on these performance standards.

Signature of Employee _____      Date

| c. Higher Level Review | d. Employee Receipt |
|---|---|
| [ ] These elements and standards have been reviewed and are approved | |
| Signature of Reviewer _____ Date | Signature of Employee _____   Date |

**7. Summary Performance Rating**

a. Appraisal Period

From  10/18/2000   To   02/28/2001

b. Type of Summary Rating (See explanation in item 9.)

[X] Rating of Record*    [ ] Interim Rating

c. Summary Performance Rating (Check the definition which describes the employee's overall performance during the rating period and sign below.

[✓] **Outstanding Performance** - Performance exceeds the described level in the performance standards for all critical elements, and for 50 percent or more of the other elements. Performance does not fall below the standard for any element of the job.

[ ] **Highly Effective** - Performance exceeds the described level in the performance standards for 50 percent or more of the critical elements. Performance does not fall below the standard for any element.

[ ] **Fully Successful** - Performance meets the described level in the performance standards for all critical elements.

[ ] **Minimally Satisfactory** - Performance in one or more critical elements is slightly below standard.

[ ] **Unacceptable Performance** - Performance fails to meet the described level in the performance standard for one or more critical elements of the job.

* This annual rating of record [ ] does [ ] does not include other performance information. If it does, see item 9 for explanation.

** If there is only one non-critical element, the percentage requirement does not apply.

d. Signature of Rater _____      3/28/01      Date

e. Employee Response

My supervisor [ ] has, [ ] has not discussed these standards and critical elements with me.

[ ] I have [✓] have not included written comments

Signature of Employee _____ Edna L. Vance _____      3/28/01  Date

| f. Higher Level Reviewer | g. Employee Receipt |
|---|---|
| [✓] I have reviewed and concur with this rating. | My signature on this form does not constitute agreement with the rating nor does it indicate that I will not grieve the rating. |
| Signature of Reviewer _____ 3/30/01  Date | Signature of Employee _____ Edna L. Vance _____ 3/28/01  Date |

8. ´    **Performance Standards and Rating**

(See DLS Appendix B to FPM 430 and Article 12 of the DOL/Local 12 Collective Bargaining Agreement for instructions on developing job elements, performance standards and making appraisals.)

Each Performance Standard and Rating will be numbered consecutively and consist of the following:

a.    Job Element: List the major objectives or responsibilities of the job.

b.    Performance Standards: For each job element, describe the results expected when performance is at a satisfactory level in terms of quality, timeliness, and quantity as appropriate. The methods of measurement should also be included, when practicable.

c.    Element Rating and Narrative: (1) Check the appropriate space as to whether the employee "Exceeds (E)," "Meets (M)," "Needs to improve (NI)," or "Fails to Meet (FM)" the standards for the element and (2) give a brief narrative description of results achieved., except when the element is rated at meets level. (A narrative is optional when the employee is rated "Meets.") Do not rate the employee on any elements on which he/she has not been assigned work and given the opportunity to perform.`

---

**(1)    (Check One)    [ X ] Critical    [ ] Noncritical**

**a. ELEMENT**:

   Prepare comprehensive data analysis reports for government and public distribution and use on selected industries, topics and/or request from customers.

**b. PERFORMANCE STANDARD:**

   Performance is acceptable when final products are produced in a user friendly, organized manner; containing accurate and useful information.

**c. ELEMENT RATING AND NARRATIVE:    [✓]E    [_]M    [_]NI    [_]FM**

   In 2000, Ms Vance completed the last phase of the second most comprehensive data analysis report ever developed by the Office of Statistic for agency-wide distribution and public consumption. The final report (Parts 1 and 2) has more than 400 pages, including 199 graphics, tables and illustrations, and is based on information from 107 case files resulting from OSHA's investigation of fatal logging incidence in FY 1997 and FY 1996. The most comprehensive agency-wide reports were also developed by Ms. Vance in 1996 and 1997 for transmission to OMB to meet a statutory requirement.

---

**(2)    (Check One)    [ X ] Critical    [ ] Noncritical**

**a. ELEMENT:**

   Develop plans of action to address key issues related to completion of assignments. Prepare observations and conclusions for use by intra-agency staff, inter-agency staff and customers.

**b. PERFORMANCE STANDARD:**

   Performance is acceptable when plans and observations are accurate and address the stated objective.

**c. ELEMENT RATING AND NARRATIVE:    [✓]E    [_]M    [_]NI    [_]FM**

   To complete the final Logging report, Ms Vance developed an action plan that included resolution of a number of key issues, including, the completeness and accuracy of the data, the validity of the observations and conclusions, the consistency of the format, and the accuracy and sufficiency of the technical and program information. To assist in this effort Ms Vance supervised the work of one professional.

Page ____ of ____

**(3)**    **(Check One)    [ X ] Critical    [ ] Noncritical**

**a. ELEMENT:**

Develop studies and/or reports related to technical issues of selected topics. Communicate with necessary experts, consultants, advisors or contractors to resolve issues.

**b. PERFORMANCE STANDARD:**

Performance is acceptable when assignments are carried out to meet established standards for accuracy, thoroughness and timeliness.

**c. ELEMENT RATING AND NARRATIVE:**    **[ ✓]E   [ __]M   [ __]NI   [ __]FM**

During the production of the Logging Report, Ms Vance developed a comprehensive list of technical issues that needed to be addressed. She conducted several 2-3 hour working meetings with OSHA's expert on logging to resolve these issues. Ms Vance also met with OSHA manager to verify the completeness and accuracy of program related information. Some issues required consultation with State Plan state compliance officers.

---

**(4)**    **(Check One)    [ ] Critical    [ X ] Noncritical**

**a. ELEMENT:**

Ability to research and develop material in comparable report format for use by inter and intra agency. Able to communicate information expressing technical accuracy and maintaining a level of understanding for all interested parties. Ability to work cooperatively with other inter and intra agency staff.

**b. PERFORMANCE STANDARD:**

Performance is acceptable when information communicated is accurate, understandable and organized and feedback is positive.

**c. ELEMENT RATING AND NARRATIVE:**    **[ ✓]E   [ __]M   [ __]NI   [ __]FM**

Ms Vance obtained preliminary comments on the final report draft from logging experts, OSHA compliance officers and an industry representative. She responded to comments and questions, and maintaining the integrity of the report, made some format revisions. Ms Vance's technical accuracy and content received excellent marks from the expert reviewers. This is consistent with earlier similar praise received from OSHA's Directors of Information Technology and Compliance Programs.

Revised data tables and graphics to improve report utility and applicability. Insured that each category of information was arrayed nationally, and by Federal region and state. Through research, identified and included comparison data from other sources, including, Bureau of Labor Statistics (BLS) fatality data, County Business Pattern (CBP) establishment data, and fatality data published by the American Pulpwood Association.

**(5)**    **(Check One)**    [ ] **Critical**    [ X ] **Noncritical**

**a. ELEMENT:**

Ability to communicate with staff of all levels information that is accurate and user friendly.

**b. PERFORMANCE STANDARD:**

Performance is acceptable when accurate analysis and reports of findings are made available in a timely fashion.

**c. ELEMENT RATING AND NARRATIVE:**    [__]E   [_✓]M   [__]NI   [__]FM

Developed a summary report to brief OSHA executives, including the Assistant Secretary, on the result of the analysis 107 case files for FY 1996 and FY 1997. Provided summary background information on the purpose and nature of the report in proposed transmittal memoranda. Additionally, modified the report evaluation form. This tool provides an organized method for communicating and addressing comments and questions from the target audience.

---

**(6)**    **(Check One)**    [ ] **Critical**    [ ] **Noncritical**

**a. ELEMENT:**

**b. PERFORMANCE STANDARD:**

**c. ELEMENT RATING AND NARRATIVE:**    [__]E   [__]M   [__]NI   [__]FM

(7)    (Check One)    [ ] Critical    [ ] Noncritical

a. **ELEMENT:**

b. **PERFORMANCE STANDARD:**

c. **ELEMENT RATING AND NARRATIVE:**    [__]E  [__]M  [__]NI  [__]FM

9.    **Consideration Given Other Ratings in Rating of Record:** Ratings of record are prepared annually. Any written performance information (including interim ratings and performance information on details or temporary reassignments/promotions) since the last rating of record in the current appraisal year will be taken into account in this rating of record.

In considering this other performance information, take into consideration such factors as level of performance, nature and level of duties and responsibilities of the assignments, importance to accomplishment of organizational goals, and length of time spent. If these interim performance ratings or information change the overall rating of record, explain fully in this space.

10.    **Other Significant Accomplishments:** Any Significant work accomplishments not covered by an element/performance standard under Item 8 should be described on an attachment.

Page ____ of ____

Performance Standards and Rating for Employees in the Local 12 Bargaining Unit

**U. S. Department of Labor**
Office of the Assistant Secretary for Administration and Management

Instructions: Sections 1 through 6 and the first two parts of Section 8 will be completed by the supervisor after coordination with the employee, at the beginning of the appraisal period. Section 7 and the remainder of Section 8 and Sections 9 and 10, as appropriate, will be completed at the end of the appraisal period.

| 1. Name of Employee<br><br>EDNA L. VANCE | 3. Organizational Location<br>U. S. Department of Labor - OSHA<br>Office of Statistics -- Room N3507<br>200 Constitution Avenue, NW<br>Washington, DC 20210 |
|---|---|
| 2. Title and Grade<br>Program Analyst -- GS-14 | |
| 4. Rating Due Date<br>03/30/2002          FEB 28, 2002 | 5. Title of Pay Deciding Official<br>DIRECTOR, IT |

**6. Establishment of Critical/Noncritical Elements and Performance Standards**

a. Rater Certification After Discussion With the Employee

_Joseph W. Bein_ _____ 4/17/01

Signature of Rater                                    Date

b. Employee Response

My supervisor ☐ has, ☐ has not discussed these standards and critical elements with me.

I ☐ have ☐ have not included comments on these performance standards.

✓ _____

Signature of Employee                                Date

| c. Higher Level Review<br>☑ These elements and standards have been reviewed and are approved.<br><br>_Cheryle A Greenaugh_ 4/17/01<br>Signature of Reviewer          Date | d. Employee Receipt<br><br>✓<br><br>Signature of Employee          Date |
|---|---|

**7. Summary Performance Rating**

a. Appraisal Period 4/17/01

From 03/01/2001   To 02/28/2002

b. Type of Summary Rating (See explanation in item 9.)
☒ Rating of Record*   ☐ Interim Rating

c. Summary Performance Rating (Check the definition which describes the employee's overall performance during the rating period and sign below.

☑ **Outstanding Performance** - Performance exceeds the described level in the performance standards for all critical elements, and for 50 percent or more of the other elements. Performance does not fall below the standard for any element of the job.

☐ **Highly Effective** - Performance exceeds the described level in the performance standards for 50 percent or more of the critical elements. Performance does not fall below the standard for any element.

☐ **Fully Successful** - Performance meets the described level in the performance standards for all critical elements.

☐ **Minimally Satisfactory** - Performance in one or more critical elements is slightly below standard.

☐ **Unacceptable Performance** - Performance fails to meet the described level in the performance standard for one or more critical elements of the job.

\* This annual rating of record ☐ does ☐ does not include other performance information. If it does, see item 9 for explanation.

\*\* If there is only one non-critical element, the percentage requirement does not apply.

2002 APR -3 PM 2: 29

d. _Joseph W. Bein_ _____ 3/27/02

Signature of Rater                                    Date

e. Employee Response

My supervisor ☑ has, ☐ has not discussed these standards and critical elements with me.

☐ I have ☑ have not included written comments

_Edna L. Vance_ _____ 3/27/02

Signature of Employee                                Date

| f. Higher Level Reviewer<br>☑ I have reviewed and concur with this rating.<br><br>_Cheryle A Greenaugh_ 3/28/02<br>Signature of Reviewer          Date | g. Employee Receipt<br>My signature on this form does not constitute agreement with the rating nor does it indicate that I will not grieve the rating.<br><br>_Edna L. Vance_ 3/27/02<br>Signature of Employee          Date |
|---|---|

Page ____ of ____

**8.     Performance Standards and Rating**

(See DLS Appendix B to FPM 430 and Article 12 of the DOL/Local 12 Collective Bargaining Agreement for instructions on developing job elements, performance standards and making appraisals.)

Each Performance Standard and Rating will be numbered consecutively and consist of the following:

A.     Job Element: List the major objectives or responsibilities of the job.

B.     Performance Standards: For each job element, describe the results expected when performance is at a satisfactory level in terms of quality, timeliness, and quantity as appropriate.  The methods of measurement should also be included, when practicable.

C.     Element Rating and Narrative: (1) Check the appropriate space as to whether the employee "Exceeds (E)," "Meets (M)," "Needs to improve (NI)," or "Fails to Meet (FM)" the standards for the element and (2) give a brief narrative description of results achieved., except when the element is rated at meets level.  (A narrative is optional when the employee is rated "Meets.") Do not rate the employee on any elements on which he/she has not been assigned work and given the opportunity to perform.`

---

**(1)     (Check One)     [ X ] Critical     [ ] Noncritical**

**a. ELEMENT:**

Prepare comprehensive data analysis reports for government and public distribution and use on selected industries, topics and/or request from customers.

**b. PERFORMANCE STANDARD:**

Performance is acceptable when final products are produced in a user friendly, organized manner; containing accurate and useful information.

**c. ELEMENT RATING AND NARRATIVE:     [ X ]E     [ ]M     [ ]NI     [ ]FM**

Ms Vance managed the final review, clearance and distribution of the Agency-wide report she developed on logging fatalities investigated by Federal and State OSHA in FY 1996 and FY 1997.  More than 125 copies were distributed to OSHA Regional and Area Offices and National Office executives.  Seventy-seven (77) copies were set aside for future distribution to Consultation and State Plan State offices.  An additional 250 copies are being produced to respond to subsequent requests and commitments.  The report was also placed on the Internet.  Completing these tasks required coordination with the Directorates of Administrative Programs, Compliance Programs, Technical Support and Federal-State Operations, and the Directors of the Directorate of Information Technology, Office of Public Affairs and Office of Statistics, as well as, the Department of Labor Print Shop and OSHA's web site developers.

**(2)**     **(Check One)**     **[ X ] Critical**     **[ ] Noncritical**

**a. ELEMENT:**

Develop plans of action to address key issues related to completion of assignments. Prepare observations and conclusions for use by intra-agency staff, inter-agency staff and customers.

**b. PERFORMANCE STANDARD:**

Performance is acceptable when plans and observations are accurate and address the stated objective.

**c. ELEMENT RATING AND NARRATIVE:**     **[ X ]E   [ ]M   [ ]NI   [ ]FM**

Ms Vance developed a 5-year plan for the Office of Statistics to conduct special studies and data analyses, and to produce data-related reports and information tools for use by OSHA staff, managers and executives in reviewing, planning and evaluating safety and health activities, and educating employers, employees and the Public on safety and health issues. The plan was comprehensive and well thought out. For each task, Ms Vance clearly defined the scope, data sources and resource needs.

---

**(3)**     **(Check One)**     **[ X ] Critical**     **[ ] Noncritical**

**a. ELEMENT:**

Develop studies and/or reports related to technical issues of selected topics. Communicate with necessary experts, consultants, advisors or contractors to resolve issues.

**b. PERFORMANCE STANDARD:**

Performance is acceptable when assignments are carried out to meet established standards for accuracy, thoroughness and timeliness.

**c. ELEMENT RATING AND NARRATIVE:**     **[ X ]E   [ ]M   [ ]NI   [ ]FM**

Ms Vance developed prototypes for two new OSHA reports - an Industry Profile report and a State Industry Facts report. Each report focuses attention on a particular industry or segment of the country by bringing together related safety and health data and other information from available sources (e.g., Bureau of Labor Statistics reports, County Business Patterns reports, OSHA's IMIS, etc.). The reports are very comprehensive and extremely well designed. Copies of the Industry Profile prototype were very well received by OSHA's Executive Staff. For each report, Ms Vance also developed a paper that explains and defines the purpose, scope, content, and suggested uses of each report.

**(4)    (Check One)    [ ] Critical    [ X ] Noncritical**

**a. ELEMENT:**

Ability to research and develop material in comparable report format for use by inter and intra agency. Able to communicate information expressing technical accuracy and maintaining a level of understanding for all interested parties. Ability to work cooperatively with other inter and intra agency staff.

**b. PERFORMANCE STANDARD:**

Performance is acceptable when information communicated is accurate, understandable and organized and feedback is positive.

**c. ELEMENT RATING AND NARRATIVE:    [ X ] E    [ ] M    [ ] NI    [ ] FM**

Ms Vance provided detailed outlines for accomplishing her tasks. Her action plans, task orders and transmittal memorandum were timely and reflected a logical progression from start to finish. She coordinated with other technical staff to establish a broad field of outreach for the reports. Ms Vance was very successful in managing a variety of projects during this rating period.

---

**(5)    (Check One)    [ ] Critical    [ X ] Noncritical**

**a. ELEMENT:**

Ability to communicate with staff of all levels information that is accurate and user friendly.

**b. PERFORMANCE STANDARD:**

Performance is acceptable when accurate analysis and reports of findings are made available in a timely fashion.

**c. ELEMENT RATING AND NARRATIVE:    [ ] E    [ X ] M    [ ] NI    [ ] FM**

Ms Vance provided briefing materials for and briefed the IT and OSTAT Directors routinely on her projects and how they impacted other staff, projects and OSHA offices. The coordination required to develop, finalize, distribute and fulfill OSHA's outreach goals related to the logging report is evidence of Ms Vances' ability to communicate with co-workers, federal and no-federal staff at all levels.

Ms Vance assigned and supervised the work of a junior level professional.

---

**9.    Consideration Given Other Ratings in Rating of Record:** Ratings of record are prepared annually. Any written performance information (including interim ratings and performance information on details or temporary reassignments/promotions) since the last rating of record in the current appraisal year will be taken into account in this rating of record.

In considering this other performance information, take into consideration such factors as level of performance, nature and level of duties and responsibilities of the assignments, importance to accomplishment of organizational goals, and length of time spent. If these interim performance ratings or information change the overall rating of record, explain fully in this space.

**10.    Other Significant Accomplishments:** Any Significant work accomplishments not covered by an element/performance standard under Item 8 should be described on an attachment.

-4-



| Performance Standards and Rating for Employees in the Local 12 Bargaining Unit | U. S. Department of Labor<br>Office of the Assistant Secretary for Administration and Management |
|---|---|

**Instructions:** Sections 1 through 6 and the first two parts of Section 8 will be completed by the supervisor after coordination with the employee, at the beginning of the appraisal period. Section 7 and the remainder of Section 8 and Sections 9 and 10, as appropriate, will be completed at the end of the appraisal period.

| | |
|---|---|
| **1. Name of Employee**<br><br>EDNA L. VANCE | **3. Organizational Location**<br>OSHA/DEA/Office of Statistical Analysis<br>Room N-3507<br>200 Constitution Avenue  N. W.<br>Washington DC  20210 |
| **2. Title and Grade**<br>        Program Analyst -- GS-14 | |
| **4. Rating Due Date**<br>10/01/2003 | **5. Title of Pay Deciding Official** |

**6. Establishment of Critical/Noncritical Elements and Performance Standards**

**a.** Rater Certification After Discussion With the Employee

Signature of Rater _____   3/12/03   Date

**b. Employee Response**

My supervisor [ ] has, [ ] has not discussed these standards and critical elements with me.

I [✓] have [ ] have not included comments on these performance standards.

Signature of Employee _____   Date

**c. Higher Level Review**

[✓] These elements and standards have been reviewed and are approved.

Signature of Reviewer _____   3/12/03   Date

**d. Employee Receipt**

Signature of Employee _____   Date

**7. Summary Performance Rating**

**a. Appraisal Period**

From  03/01/2003    To  09/30/2003

**b. Type of Summary Rating** (See explanation in item 9.)

[X] Rating of Record*    [ ] Interim Rating

**c. Summary Performance Rating** (Check the definition which describes the employee's overall performance during the rating period and sign below.

[✓] **Outstanding Performance** - Performance exceeds the described level in the performance standards for all critical elements, and for 50 percent or more of the other elements. Performance does not fall below the standard for any element of the job.

[ ] **Highly Effective** - Performance exceeds the described level in the performance standards for 50 percent or more of the critical elements. Performance does not fall below the standard for any element.

[ ] **Fully Successful** - Performance meets the described level in the performance standards for all critical elements.

[ ] **Minimally Satisfactory** - Performance in one or more critical elements is slightly below standard.

[ ] **Unacceptable Performance** - Performance fails to meet the described level in the performance standard for one or more critical elements of the job.

\* This annual rating of record [ ] does [ ] does not include other performance information. If it does, see item 9 for explanation.

\*\* If there is only one non-critical element, the percentage requirement does not apply.

**d.** Signature of Rater _____   12/19/03   Date

**e. Employee Response**

My supervisor [ ] has, [ ] has not discussed these standards and critical elements with me.     [ ] I have [ ] have not included written comments

Signature of Employee _____   12-19-03   Date

**f. Higher Level Reviewer**

[✓] I have reviewed and concur with this rating.

Signature of Reviewer _____   12/19/03   Date

**g. Employee Receipt**

My signature on this form does not constitute agreement with the rating nor does it indicate that I will not grieve the rating.

Signature of Employee _____   Date

DL 1-390
Rev. Sept. 1992

page — 2 —

**8.**    **Performance Standards and Rating**

(See DLS Appendix B to FPM 430 and Article 12 of the DOL/Local 12 Collective Bargaining Agreement for instructions on developing job elements, performance standards and making appraisals.)

Each Performance Standard and Rating will be numbered consecutively and consist of the following:

A.    Job Element: List the major objectives or responsibilities of the job.

B.    Performance Standards: For each job element, describe the results expected when performance is at a satisfactory level in terms of quality, timeliness, and quantity as appropriate. The methods of measurement should also be included, when practicable.

C.    Element Rating and Narrative: (1) Check the appropriate space as to whether the employee "Exceeds (E)," "Meets (M)," "Needs to improve (NI)," or "Fails to Meet (FM)" the standards for the element and (2) give a brief narrative description of results achieved, except when the element is rated at meets level. (A narrative is optional when the employee is rated, "Meets.") Do not rate the employee on any elements on which he/she has not been assigned work and given the opportunity to perform.

---

**(1)    (Check One)    [ X ] Critical    [ ] Noncritical**

**A. ELEMENT:**

Prepare comprehensive data analysis reports for government and public distribution and use on selected industries, topics and/or request from customers.

**B. PERFORMANCE STANDARD:**

Performance is acceptable when final products are produced in a user friendly, organized manner; containing accurate and useful information.

**C. ELEMENT RATING AND NARRATIVE:**    [ ✓ ]E    [ ]M    [ ]NI    [ ]FM

Consulted with office managers on the OSHA Data initiative (ODI) survey and other sources of data. Reviewed, evaluated and produced 10 OSHA Regional reports from the ODI data and other sources to support meetings with managers and top level executives, and the development of a significant agency policy and program proposal. Organized the data to highlight and support key issues and arguments related to individual employer-reported injury and illness rates. The 10 reports represented 10m categories of information, included more than 40,000 responses to the ODI 2001 survey, and totaled more than 1900 pages.

---

**(2)    (Check One)    [ X ] Critical    [ ] Noncritical**

**A. ELEMENT:**

Develop plans of action to address key issues related to completion of assignments. Prepare observations and conclusions for use by intra-agency staff, inter-agency staff and customers.

**B. PERFORMANCE STANDARD:**

Performance is acceptable when plans and observations are accurate and address the stated objective.

page — of —

C. ELEMENT RATING AND NARRATIVE:    [✓]E  [__]M  [__]NI  [__]FM

Ms Vance worked with office managers to identify and represent OSHA ODI and VPP program data graphically as part of a decision presentation to the Assistant Secretary and Deputy Assistant Secretaries. Reviewed, assessed, and organized the data in graphic formats to support proposed new policy/program initiatives.

---

(3)    (Check One)    [ X ] Critical    [ ] Noncritical

A. ELEMENT:

Develop studies and/or reports related to technical issues of selected topics. Communicate with necessary experts, consultants, advisors or contractors to resolve issues.

B. PERFORMANCE STANDARD:

Performance is acceptable when assignments are carried out to meet established standards for accuracy, thoroughness and timeliness.

C. ELEMENT RATING AND NARRATIVE:    [✓]E  [__]M  [__]NI  [__]FM

Ms Vance developed prototype reports for communicating Bureau of Labor Statistics (BLS) rate data and OSHA inspection activity data to OSHA and the public. The reports consisted of tables and graphic presentations, and represented those industries with the highest total injury/illness incidence rates and the highest LWDII rates in 2002. Corresponding tables and graphic presentations were developed showing the number and type of inspections conducted by OSHA in these same high rate industries. Each table and graphic provided a historical perspective by providing 5 years of data for each industry (1998 –m 2002). The reports would be updated annually by adding the most recent year of data and dropping the oldest.

---

(4)    (Check One)    [ ] Critical    [ X ] Noncritical

A. ELEMENT:

Ability to research and develop material in comparable report format for use by inter and intra agency. Able to communicate information expressing technical accuracy and maintaining a level of understanding for all interested parties. Ability to work cooperatively with other inter and intra agency staff.

B. PERFORMANCE STANDARD:

Performance is acceptable when information communicated is accurate, understandable and organized and feedback is positive.

C. ELEMENT RATING AND NARRATIVE:    [__]E  [✓]M  [__]NI  [__]FM

Ms Vance provided detailed outlines for accomplishing her tasks. Additional work and modifications to her action plans, prototype reports and transmittal memorandum reflected a logical progression from start to finish and was easily comprehended by all reviewers and interested parties. Ms Vance coordinated technical aspects of the project, as well as instructed and monitored work of other staff to ensure time frames were met on various projects.

page —of—

where logging is a major industry.

---

9. **Consideration Given Other Ratings in Rating of Record:** Ratings of record are prepared annually. Any written performance information (including interim ratings and performance information on details or temporary reassignments/promotions) since the last rating of record in the current appraisal year will be taken into account in this rating of record.

In considering this other performance information, take into consideration such factors as level of performance, nature and level of duties and responsibilities of the assignments, importance to accomplishment of organizational goals, and length of time spent. If these interim performance ratings or information change the overall rating of record, explain fully in this space.

10. **Other Significant Accomplishments:** Any significant work accomplishments not covered by an element/performance standard under Item 8 should be described on an attachment.

-3-

page — of —



# PERFORMANCE MANAGEMENT PLAN
## FOR NON-MANAGERS AND
## NON-SUPERVISORS

Attachment ___

## General Information

Name: _Edna Vance_____

Organization: _____OSHA/DEA/office of Statistical Analysis_____

Appraisal Period: __10/01/2003_____To _____09/30/2004_____

## Establishment of the Performance Management Plan

We have discussed this plan; written comments have _____ have not _____ been attached.

Employee: _____    Date: _____

Rating Official: _____    Date: _____

Reviewing Official: _____    Date: _____

## Mid-Term Progress Review Certification

The mid-term progress review has been conducted.

Employee: _____    Date: _____

Rating Official: _____    Date: _____

## Performance Appraisal and Rating

|   | Exemplary | Exceed standards for all elements |
|---|---|---|
| ✓ | Highly Effective | Exceed standards for 50% or more elements but not all; meet standards for all other elements |
|   | Effective | Meet standards for all elements and may exceed standards for less than 50% of elements |
|   | Minimally Satisfactory | Need to improve performance for one or more elements |
|   | Unsatisfactory | Fail to meet standards on one or more elements |

We have discussed this appraisal; written comments have ___ have not ___ been attached.

Employee: _____    Date: _____

Rating Official: _____    Date: _Dec 6, 2004_____

Reviewing Official: _____    Date: _12/8/04_____

_____

Page ____ of ____

| Performance
| Summary

For each element, use an "X" to indicate the appropriate rating. Element ratings:  **E = Exceed, M = Meet,
Nl = Need to Improve, F = Fail**

| ELEMENT | ELEMENT RATING | | | |
|---------|:---:|:---:|:---:|:---:|
|  | E | M | NI | F |
| Result 1 | ✓ | | | |
| Result 2 | ✓ | | | |
| Result 3 | | ✓ | | |
| Result 4 | ✓ | | | |
| Result 5 | | ✓ | | |
| Result 6 | | | | |
| Result 7 | | | | |
| Result 8 | | | | |

**PURPOSE OF APPRAISAL:**     _____ **Interim Rating**     _H E_ **Rating of Record**

**CONSIDERATION GIVEN TO OTHER RATINGS IN RATING OF RECORD:**
Any written performance information (including interim ratings and performance information on details or temporary reassignments/promotions) since the last annual rating of record will be taken into account in this rating of record.   If these interim performance ratings or information impact the overall rating of record, explain fully in this space.

| Other
| Significant
| Accomplishments

## Elements

**Element 1:** Prepare comprehensive data analysis reports for government and public distribution and use on selected industries, topics and/or request from customers.

--------------------------------------------------

**Performance Standard:** Performance is acceptable when final products are produced in a user friendly, organized manner; containing accurate and useful information.

**Narrative:** Ms. Vance developed a number of significant data reports. Using OSHA Data Initiative (ODI) data and other supplemental information, Ms. Vance prepared nine (9) OSHA Regional reports focusing on employer-reported injury/illness rates and employment numbers in 2001. She also produced a Region III prototype report that focused on different employer-reported rates and employment numbers in 2002. The reports were well organized to highlight and support the key issues and arguments. The report information was accurate, was shared with executives and managers, and was used to support major policy changes in the way 'site specific targeting' and 'ODI audits and verifications' are determined.

**Rating:**
- [x] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

**Element 2:** Develop plans of action to address key issues related to completion of assignments. Prepare observations and conclusions for use by intra-agency staff, inter-agency staff and customers.

**Performance Standard:** Performance is acceptable when plans and observations are accurate and address the stated objective.

**Narrative:** Ms. Vance met with OSHA managers and program and data experts before and during the development and production of the ODI data reports, the ODI/VPP slide presentation, and the recordkeeping handbook. She identified, discussed and resolved many key issues related to the content, accuracy, organization, and usefulness of the materials. In developing the ODI data reports, Ms. Vance researched and recommended a secondary source of information that provided the industry name beside each SIC code, and substituted the OSHA Area Office name for the 2-digit identifier. Based on a review and assessment of ODI and VPP data, Ms. Vance developed a decision presentation of graphics and summary tables for an Assistant Secretary briefing. The presentation illustrated, among other things, an opportunity to substantially increase the number of VPP sites. The enormous size of the handbook required special planning and organization. Ms. Vance was able to take different material in different formats and blend them into one coherent and logical document.

**Rating:**
- [x] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

## Elements

**Element: 3:** Develop studies and/or reports related to technical issues of selected topics. Communicate with necessary experts, consultants, advisors or contractors to resolve issues.

**Performance Standard:** Performance is acceptable when assignments are carried out to meet established standards for accuracy, thoroughness and timeliness.

**Narrative:** Ms. Vance completed a major milestone for OSHA, the development of the OSHA Recordkeeping Handbook. This handbook will replace a similar publication issued in 1986. The new handbook is very comprehensive, incorporating information from Agency Federal Register notices, compliance directives and the web. It will be distributed in OSHA and to the public via the Internet, on CD and in hard copy.

Ms. Vance completed the first draft of the handbook in record breaking time. She worked well under a tight deadline and a high priority issued by the Assistant Secretary. She demonstrated initiative, creativity, great organizational skills and attention to detail. The 'user-friendly' format organizes information by regulatory section and will facilitate ease in identifying pertinent facts and issues related to each specific regulatory requirement. She supervised the work of a junior analyst.

**Rating:**
- [ ] Exceeds described level of performance (narrative required)
- [✓] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

**Element: 4:** Ability to research and develop material in comparable report format for use by inter and intra agency. Able to communicate information expressing technical accuracy and maintaining a level of understanding for all interested parties. Ability to work cooperatively with other inter and intra agency staff.

**Performance Standard:** Performance is acceptable when information communicated is accurate, understandable and organized and feedback is positive.

**Narrative:** Using different sources of information and her experience in developing Agency manuals and reports, Ms. Vance developed the OSHA Recordkeeping Handbook. The "user-friendly" format organizes information by regulatory section and will facilitate ease in identifying pertinent facts and issues related to each specific regulatory requirement. The 272 page Handbook is expected to be used by OSHA, private sector employers, Federal agencies, safety and health professionals, and others interested in identify information on the requirements for recording and reporting occupational injuries and illnesses.

Because of the potentially wide use of this document, accuracy and consistency have been key issues, and, Ms. Vance responded, exercising great care and diligence in verifying and validating represented information. She conducted a detailed review of all reference documents, noted actual and potential problems, discussed these issues when warranted, and made adjustments and corrections as directed.

**Rating:**
- [✓] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

## Elements

**Element 5:** Ability to communicate with staff of all levels information that is accurate and user friendly.

**Performance Standard:** Performance is acceptable when accurate analysis and reports of findings are made available in a timely fashion.

**Narrative:** Ms Vance provided briefing materials for and briefed the OSTAT Directors on proposed project's and how they may impact other staff, projects and OSHA offices. Ms Vance continued to display excellent coordination skills required to develop and monitor projects which fulfill OSHA's outreach goals. Her ability to communicate with co-workers, federal and non-federal staff at all levels is evident in the cooperation received by various offices and agencies.

Ms Vance continued to field significant questions about the content of her Agency-wide report on logging fatalities investigated by Federal and State OSHA in FY 1996 and FY 1997. She responded to request for copies to be used in training and in discussions in the field in areas where logging is a major industry.

Rating:
- [ ] Exceeds described level of performance (narrative required)
- [x] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

**Element :**

**Performance Standard:**

**Narrative:**

Rating:
- [ ] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)



# PERFORMANCE MANAGEMENT PLAN FOR NON-MANAGERS AND NON-SUPERVISORS

Attachment __

## General Information

Name: __Edna Vance_____

Organization: _____OSHA/DEA/office of Statistical Analysis_____

Appraisal Period: __1/24/2005_____To _____04/30/2005_____

## Establishment of the Performance Management Plan

**We have discussed this plan; written comments have _____ have not _____ been attached.**

Employee: _____     Date: _____

Rating Official: _____     Date: _____

Reviewing Official: _____     Date: _____

## Mid-Term Progress Review Certification

**The mid-term progress review has been conducted.**

Employee: _____     Date: _____

Rating Official: _____     Date: _____

## Performance Appraisal and Rating

|  | | |
|---|---|---|
|  | **Exemplary** | Exceed standards for all elements |
|  | **Highly Effective** | Exceed standards for 50% or more elements but not all; meet standards for all other elements |
|  | **Effective** | Meet standards for all elements and may exceed standards for less than 50% of elements |
|  | **Minimally Satisfactory** | Need to improve performance for one or more elements |
|  | **Unsatisfactory** | Fail to meet standards on one or more elements |

**We have discussed this appraisal; written comments have ___ have not ___ been attached.**

Employee: _____     Date: _____

Rating Official: _____     Date: _____

Reviewing Official: _____     Date: _____

**Performance Summary**

For each element, use an "X" to indicate the appropriate rating. Element ratings:  E = Exceed, M = Meet, NI = Need to Improve, F = Fail

| ELEMENT | ELEMENT RATING | | | |
|---|---|---|---|---|
| | E | M | NI | F |
| Result 1 | | | | |
| Result 2 | | | | |
| Result 3 | | | | |
| Result 4 | | | | |
| Result 5 | | | | |
| Result 6 | | | | |
| Result 7 | | | | |
| Result 8 | | | | |

**PURPOSE OF APPRAISAL:** _____ **Interim Rating** _____ **Rating of Record**

**CONSIDERATION GIVEN TO OTHER RATINGS IN RATING OF RECORD:**

Any written performance information (including interim ratings and performance information on details or temporary reassignments/promotions) since the last annual rating of record will be taken into account in this rating of record.   If these interim performance ratings or information impact the overall rating of record, explain fully in this space.

**Other Significant Accomplishments**

Page _____ of _____
DL-1-384
7/2003

## Elements

**Element 1**:  Prepare comprehensive data analysis reports for government and public distribution and use on selected industries, topics and/or request from customers.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Performance Standard:**   Performance is acceptable when final products are produced in a user friendly, organized manner; containing accurate and useful information.

**Narrative:**

Rating:
- [ ] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

**Element 2**:  Develop plans of action to address key issues related to completion of assignments. Prepare observations and conclusions for use by intra-agency staff, inter-agency staff and customers.

**Performance Standard:**   Performance is acceptable when plans and observations are accurate and address the stated objective.

**Narrative:**

Rating:
- [ ] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

| Elements | |
|---|---|

**Element: 3:** Develop studies and/or reports related to technical issues of selected topics. Communicate with necessary experts, consultants, advisors or contractors to resolve issues.

**Performance Standard:** Performance is acceptable when assignments are carried out to meet established standards for accuracy, thoroughness and timeliness.

**Narrative:**

Rating:
- ☐ Exceeds described level of performance (narrative required)
- ☐ Meets described level of performance (no narrative required)
- ☐ Needs to improve in order to meet the level of performance in the standard (narrative required)
- ☐ Fails to meet described level of performance (narrative required)

**Element: 4:** Ability to research and develop material in comparable report format for use by inter and intra agency. Able to communicate information expressing technical accuracy and maintaining a level of understanding for all interested parties. Ability to work cooperatively with other inter and intra agency staff.

**Performance Standard:** Performance is acceptable when information communicated is accurate, understandable and organized and feedback is positive.

**Narrative:**

Rating:
- ☐ Exceeds described level of performance (narrative required)
- ☐ Meets described level of performance (no narrative required)
- ☐ Needs to improve in order to meet the level of performance in the standard (narrative required)
- ☐ Fails to meet described level of performance (narrative required)

| **Elements** | |
|---|---|

**Element 5:**  Ability to communicate with staff of all levels information that is accurate and user friendly.

**Performance Standard:**    Performance is acceptable when accurate analysis and reports of findings are made available in a timely fashion.

**Narrative:**

Rating:
- ☐ Exceeds described level of performance (narrative required)
- ☐ Meets described level of performance (no narrative required)
- ☐ Needs to improve in order to meet the level of performance in the standard (narrative required)
- ☐ Fails to meet described level of performance (narrative required)

**Element 6:**  Develop an internal agency Auditors' Handbook (Handbook), based on review of OSHA program instructions and input by OSHA subject matter experts for use by Regional Audit Coordinators/Teams.  This Handbook should contain practical guidance in preparing annual audit work plans; selecting audit topics; conducting all types of audits; preparing audit reports; making recommendations; and following up on corrective actions.

**Performance Standard:**  This element is met when the Handbook is completed on its due date and includes all of the components listed in the element above.  This element is exceeded when all of the preceding is met, and the handbook comprehensively addresses all major OSHA program functions conducted by field offices, including office management, data system management, enforcement activities, whistleblower investigations, state plan monitoring, and cooperative/compliance assistance activities.

**Narrative:**

Rating:
- ☐ Exceeds described level of performance (narrative required)
- ☐ Meets described level of performance (no narrative required)
- ☐ Needs to improve in order to meet the level of performance in the standard (narrative required)
- ☐ Fails to meet described level of performance (narrative required)



# PERFORMANCE MANAGEMENT PLAN FOR NON-MANAGERS AND NON-SUPERVISORS

Attachment ____

## General Information

Name:   __Edna Vance_____

Organization: _____OSHA/DEA/Office of Statistical Analysis_____

Appraisal Period:  __02/07/2005_____To _____05/09/2005_____

## Establishment of the Performance Management Plan

**We have discussed this plan; written comments have _____ have not _____ been attached.**

Employee: _____     Date: _____

Rating Official: _____     Date: _____

Reviewing Official: _____     Date: _____

## Mid-Term Progress Review Certification

**The mid-term progress review has been conducted.**

Employee: _____     Date: _____

Rating Official: _____     Date: _____

## Performance Appraisal and Rating

| | | |
|---|---|---|
| | **Exemplary** | Exceed standards for all elements |
| | **Highly Effective** | Exceed standards for 50% or more elements but not all; meet standards for all other elements |
| | **Effective** | Meet standards for all elements and may exceed standards for less than 50% of elements |
| | **Minimally Satisfactory** | Need to improve performance for one or more elements |
| | **Unsatisfactory** | Fail to meet standards on one or more elements |

**We have discussed this appraisal; written comments have ___   have not ___ been attached.**

Employee: _____     Date: _____

Rating Official: _____     Date: _____

Reviewing Official: _____     Date: _____

**Performance Summary**

For each element, use an "X" to indicate the appropriate rating. Element ratings:  E = Exceed, M = Meet, NI = Need to Improve, F = Fail

| ELEMENT | ELEMENT RATING | | | |
|---------|:-:|:-:|:-:|:-:|
|  | **E** | **M** | **NI** | **F** |
| Result 1 | | | | |
| Result 2 | | | | |
| Result 3 | | | | |
| Result 4 | | | | |
| Result 5 | | | | |
| Result 6 | | | | |
| Result 7 | | | | |
| Result 8 | | | | |

**PURPOSE OF APPRAISAL:** _____ **Interim Rating** _____ **Rating of Record**

**CONSIDERATION GIVEN TO OTHER RATINGS IN RATING OF RECORD:**
Any written performance information (including interim ratings and performance information on details or temporary reassignments/promotions) since the last annual rating of record will be taken into account in this rating of record.  If these interim performance ratings or information impact the overall rating of record, explain fully in this space.

**Other Significant Accomplishments**

## Elements

**Element 1**: Prepare comprehensive data analysis reports for government and public distribution and use on selected industries, topics and/or request from customers.

**Performance Standard**: Performance is acceptable when final products are produced in a user friendly, organized manner; containing accurate and useful information.

**Narrative:**

Rating:
- ☐ Exceeds described level of performance (narrative required)
- ☐ Meets described level of performance (no narrative required)
- ☐ Needs to improve in order to meet the level of performance in the standard (narrative required)
- ☐ Fails to meet described level of performance (narrative required)

**Element 2**: Develop plans of action to address key issues related to completion of assignments. Prepare observations and conclusions for use by intra-agency staff, inter-agency staff and customers.

**Performance Standard**: Performance is acceptable when plans and observations are accurate and address the stated objective.

**Narrative:**

Rating:
- ☐ Exceeds described level of performance (narrative required)
- ☐ Meets described level of performance (no narrative required)
- ☐ Needs to improve in order to meet the level of performance in the standard (narrative required)
- ☐ Fails to meet described level of performance (narrative required)

## Elements

**Element: 3:**  Develop studies and/or reports related to technical issues of selected topics. Communicate with necessary experts, consultants, advisors or contractors to resolve issues.

**Performance Standard**:  Performance is acceptable when assignments are carried out to meet established standards for accuracy, thoroughness and timeliness.

**Narrative:**

Rating:
☐ Exceeds described level of performance (narrative required)
☐ Meets described level of performance (no narrative required)
☐ Needs to improve in order to meet the level of performance in the standard (narrative required)
☐ Fails to meet described level of performance (narrative required)

**Element: 4:**  Ability to research and develop material in comparable report format for use by inter and intra agency.  Able to communicate information expressing technical accuracy and maintaining a level of understanding for all interested parties.  Ability to work cooperatively with other inter and intra agency staff.

**Performance Standard:**   Performance is acceptable when information communicated is accurate, understandable and organized and feedback is positive.

**Narrative:**

Rating:
☐ Exceeds described level of performance (narrative required)
☐ Meets described level of performance (no narrative required)
☐ Needs to improve in order to meet the level of performance in the standard (narrative required)
☐ Fails to meet described level of performance (narrative required)

Page ____ of ____

**Elements**

**Element 5:** Ability to communicate with staff of all levels information that is accurate and user friendly.

**Performance Standard:**     Performance is acceptable when accurate analysis and reports of findings are made available in a timely fashion.

**Narrative:**

**Rating:**
- ☐ Exceeds described level of performance (narrative required)
- ☐ Meets described level of performance (no narrative required)
- ☐ Needs to improve in order to meet the level of performance in the standard (narrative required)
- ☐ Fails to meet described level of performance (narrative required)

**Element 6:**

**Performance Standard:**

**Narrative:**

**Rating:**
- ☐ Exceeds described level of performance (narrative required)
- ☐ Meets described level of performance (no narrative required)
- ☐ Needs to improve in order to meet the level of performance in the standard (narrative required)
- ☐ Fails to meet described level of performance (narrative required)

**Elements**

Attachment ____

February 24, 2005


TO:        Joseph DuBois

FROM:      Edna L. Vance        *Edna L. Vance*

SUBJECT:   90-Day Performance Plan


As attached, I am returning the 90-day Performance Plan you provided to me on February 10, 2005.  As you explained to me on January 25, 2005 and again on February 10, 2005, I was being put on the 90-day plan, as directed by the OSHA Personnel Office, because I did not sign my December 2004, performance appraisal.  I will address my concerns with the 90-day plan through appropriate channels.

cc: Sanders
    Copening

## Vance, Edna - OSHA

**From:**  Vance, Edna - OSHA

**Sent:**  Thursday, February 10, 2005 3:13 PM

**To:**  DuBois, Joe - OSHA

**Cc:**  Vance, Edna - OSHA; Copening, Linda M - ESA

**Subject:** 90-day Elements and Standards

Joe DuBois,

This is to confirm that on January 25, 2005, you provided me with Performance Elements and Standards for 90 days.  On that day (January 25th ), you stated that the reason for putting me under 90-day elements and standards was because I had not signed my previous performance appraisal. Today (02/10/05) you provided me with revised elements and standards for 90 days for the same reason, as stated by you.


Edna L. Vance

Attachment ____



**People Power**
*A Department of Labor Human Resource System*

Logout

| Employee: Vance,Edna L | | ID: 00009168 | Help |

Home

| Review Date | Rating | Next Review Date |
|---|---|---|
| 10/28/2004 | Greater than Fully Successful | 09/30/2005 |
| 12/19/2003 | Outstanding or Equivalent | 09/30/2004 |
| 05/09/2003 | Outstanding or Equivalent | 02/28/2004 |

| Award Date | Award Type | Amount | Hours |
|---|---|---|---|
| 01/21/2004 | Performance Award | 1060 | 0 |
| 1   8/2003 | Instant Good Job Award | 150 | 0 |
| 06/09/2003 | Performance Award | 1444 | 0 |

| Employee Data | Employee Dates | Employee Training |

Personnel Data - Covered by Privacy Act of 1974

Attachment ___



Login or Search Menu >> Employee Data >> Search or Statistics                    Logout

**Employee:** Vance,Edna L                                    **ID:** 00009168    Help

                                                                              Home

| Review Date | Rating | Next Review Date |
|---|---|---|
| 10/28/2004 | **Greater than Fully Successful** | 09/30/2005 |
| 12/19/2003 | **Outstanding or Equivalent** | 09/30/2004 |
| 05/09/2003 | **Outstanding or Equivalent** | 02/28/2004 |

| Award Date | Award Type | Amount | Hours |
|---|---|---|---|
| 01/21/2004 | Performance Award | 1060 | 0 |
| 1_ 08/2003 | Instant Good Job Award | 150 | 0 |
| 06/09/2003 | Performance Award | 1444 | 0 |

| Employee Data | Employee Dates | Employee Training |
|---|---|---|

Personnel Data - Covered by Privacy Act of 1974

Attachment ____



Login => MainMenu => Employee Data >> Awards/Appraisals
Logout

**Employee:** Vance,Edna L                          **ID:** 00009168          Help

Home

Appraisals

| Review Date | Rating | Next Review Date |
|---|---|---|
| 10/28/2004 | Greater than Fully Successful | 09/30/2005 |
| 12/19/2003 | Outstanding or Equivalent | 09/30/2004 |
| 05/09/2003 | Outstanding or Equivalent | 02/28/2004 |

Awards

| Award Date | Award Type | Amount | Hours |
|---|---|---|---|
| 07/21/2004 | Performance Award | 1060 | 0 |
| 12/08/2003 | Instant Good Job Award | 150 | 0 |
| 06/09/2003 | Performance Award | 1444 | 0 |

| Employee Data | Employee Dates | Employee Training |
|---|---|---|

Personnel Data – Covered by Privacy Act of 1974



**Employee:** Vance,Edna L

Logout

Help

Home

| Selection | Action | Effective Date | WIP Status |
|-----------|--------|----------------|------------|
| Select | Conversion | 04/03/2005 | Proc by HR |
| Select | Pay Rate Change | 01/09/2005 | Proc by HR |
| Select | Pay Rate Change | 12/26/2004 | Proc by HR |
| Select | Award - Monetary | 12/01/2004 | Cancelled |
| Select | Award - Monetary | 01/21/2004 | Corrected |
| Select | Award - Monetary | 01/21/2004 | Proc by HR |
| Select | Pay Rate Change | 01/11/2004 | Corrected |
| Select | Pay Rate Change | 01/11/2004 | Proc by HR |
| Select | Award - Monetary | 12/08/2003 | Proc by HR |
| Select | Award - Monetary | 06/09/2003 | Proc by HR |
| Select | Pay Rate Change | 01/12/2003 | Proc by HR |
| Select | Pay Rate Change | 01/12/2003 | Proc by HR |
| Select | Data Change | 10/06/2002 | Proc by HR |
| Select | Conversion | 07/28/2002 | Proc by HR |
| Select | Award - Monetary | 04/29/2002 | Proc by HR |
| Select | Pay Rate Change | 01/13/2002 | Proc by HR |
| Select | Pay Rate Change | 12/30/2001 | Proc by HR |
| Select | Conversion | 10/21/2001 | Proc by HR |
| Select | Award - Monetary | 05/08/2001 | Proc by HR |
| Select | Pay Rate Change | 01/14/2001 | Proc by HR |
| Select | Data Change | 08/12/2000 | Proc by HR |
| Select | Data Change | 08/09/2000 | Cancelled |

| | | | |
|---|---|---|---|
| Select | Award - Monetary | 06/14/2000 | Proc by HR |
| Select | Data Change | 01/30/2000 | Proc by HR |
| Select | Pay Rate Change | 01/02/2000 | Proc by HR |
| Select | Award - Monetary | 06/25/1999 | Proc by HR |
| Select | Pay Rate Change | 01/03/1999 | Proc by HR |

Attachment _____



Login >> MainMenu >> Employee Data >> Awards/Appraisals          Logout

**Employee:** Vance,Edna L                                    **ID:** 00009168     Help

                                                                             Home

Appraisals

| Review Date | Rating | Next Review Date |
|---|---|---|
| 10/28/2004 | Greater than Fully Successful | 09/30/2005 |
| 12/19/2003 | Outstanding or Equivalent | 09/30/2004 |
| 05/09/2003 | Outstanding or Equivalent | 02/28/2004 |

Awards

| Award Date | Award Type | Amount | Hours |
|---|---|---|---|
| 01/21/2004 | Performance Award | 1060 | 0 |
| 12/08/2003 | Instant Good Job Award | 150 | 0 |
| 06/09/2003 | Performance Award | 1444 | 0 |

| Employee Data | Employee Dates | Employee Training |
|---|---|---|

**Personnel Data - Covered by Privacy Act of 1974**

Attachment ____

February 24, 2005

TO:          Joseph DuBois

FROM:        Edna L. Vance *Edna L. Vance*

SUBJECT:     90-Day Performance Plan

As attached, I am returning the 90-day Performance Plan you provided to me on February 10, 2005.  As you explained to me on January 25, 2005 and again on February 10, 2005, I was being put on the 90-day plan, as directed by the OSHA Personnel Office, because I did not sign my December 2004, performance appraisal.  I will address my concerns with the 90-day plan through appropriate channels.

cc: Sanders
    Copening



# PERFORMANCE MANAGEMENT PLAN FOR NON-MANAGERS AND NON-SUPERVISORS

## General Information

Name:  _Edna Vance_____

Organization:  _____OSHA/DEA/Office of Statistical Analysis_____

Appraisal Period:  ~~02/07/2005~~ 3/1/05  To  _____~~05/09/2005~~  6/1/05_____

## Establishment of the Performance Management Plan

**We have discussed this plan; written comments have _____ have not _____ been attached.**

Employee: _____  Date: _____

Rating Official: _____  Date: __2/10/05_____

Reviewing Official: _____Ruth W Pitt_____  Date: __2/24/05_____

Employee declined to sign new ~~standards~~ via note dated 2/24/05. RWP

→ Performance management plan RWP

## Mid-Term Progress Review Certification

**The mid-term progress review has been conducted.**

Employee: _____  Date: _____

Rating Official: _____  Date: _____

## Performance Appraisal and Rating

|  | Exemplary | Exceed standards for all elements |
|---|---|---|
|  | **Highly Effective** | Exceed standards for 50% or more elements but not all; meet standards for all other elements |
|  | **Effective** | Meet standards for all elements and may exceed standards for less than 50% of elements |
|  | **Minimally Satisfactory** | Need to improve performance for one or more elements |
|  | **Unsatisfactory** | Fail to meet standards on one or more elements |

**We have discussed this appraisal; written comments have ___ have not ___ been attached.**

Employee: _____  Date: _____

Rating Official: _____  Date: _____

Reviewing Official: _____  Date: _____

**Performance Summary**

For each element, use an "X" to indicate the appropriate rating. Element ratings: E = Exceed, M = Meet, NI = Need to Improve, F = Fail

| ELEMENT | ELEMENT RATING | | | |
|---|---|---|---|---|
| | E | M | NI | F |
| Result 1 | | | | |
| Result 2 | | | | |
| Result 3 | | | | |
| Result 4 | | | | |
| Result 5 | | | | |
| Result 6 | | | | |
| Result 7 | | | | |
| Result 8 | | | | |

**PURPOSE OF APPRAISAL:**    _____ Interim Rating    _____ Rating of Record

**CONSIDERATION GIVEN TO OTHER RATINGS IN RATING OF RECORD:**
Any written performance information (including interim ratings and performance information on details or temporary reassignments/promotions) since the last annual rating of record will be taken into account in this rating of record.   If these interim performance ratings or information impact the overall rating of record, explain fully in this space.

**Other Significant Accomplishments**

## Elements

**Element 1**:   Prepare comprehensive data analysis reports for government and public distribution and use on selected industries, topics and/or request from customers.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Performance Standard:**   Performance is acceptable when final products are produced in a user friendly, organized manner, containing accurate and useful information.

**Narrative:**

| Rating: | |
|---|---|
| | ☐ Exceeds described level of performance (narrative required) |
| | ☐ Meets described level of performance (no narrative required) |
| | ☐ Needs to improve in order to meet the level of performance in the standard (narrative required) |
| | ☐ Fails to meet described level of performance (narrative required) |

**Element 2**:   Develop plans of action to address key issues related to completion of assignments. Prepare observations and conclusions for use by intra-agency staff, inter-agency staff and customers.

**Performance Standard:**   Performance is acceptable when plans and observations are accurate and address the stated objective.

**Narrative:**

| Rating: | |
|---|---|
| | ☐ Exceeds described level of performance (narrative required) |
| | ☐ Meets described level of performance (no narrative required) |
| | ☐ Needs to improve in order to meet the level of performance in the standard (narrative required) |
| | ☐ Fails to meet described level of performance (narrative required) |

## Elements

**Element: 3:**  Develop studies and/or reports related to technical issues of selected topics. Communicate with necessary experts, consultants, advisors or contractors to resolve issues.

**Performance Standard**:  Performance is acceptable when assignments are carried out to meet established standards for accuracy, thoroughness and timeliness.

**Narrative:**

**Rating:**
- ☐ Exceeds described level of performance (narrative required)
- ☐ Meets described level of performance (no narrative required)
- ☐ Needs to improve in order to meet the level of performance in the standard (narrative required)
- ☐ Fails to meet described level of performance (narrative required)

**Element: 4:**  Ability to research and develop material in comparable report format for use by inter and intra agency.  Able to communicate information expressing technical accuracy and maintaining a level of understanding for all interested parties.  Ability to work cooperatively with other inter and intra agency staff.

**Performance Standard:**  Performance is acceptable when information communicated is accurate, understandable and organized and feedback is positive.

**Narrative:**

**Rating:**
- ☐ Exceeds described level of performance (narrative required)
- ☐ Meets described level of performance (no narrative required)
- ☐ Needs to improve in order to meet the level of performance in the standard (narrative required)
- ☐ Fails to meet described level of performance (narrative required)

## Elements

**Element 5:**  Ability to communicate with staff of all levels information that is accurate and user friendly.

**Performance Standard:**  Performance is acceptable when accurate analysis and reports of findings are made available in a timely fashion.

**Narrative:**

Rating:
- [ ] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

**Element 6:**

**Performance Standard:**

**Narrative:**

Rating:
- [ ] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

## Elements

Attachment ___



# PERFORMANCE MANAGEMENT PLAN FOR NON-MANAGERS AND NON-SUPERVISORS

## General Information

Name: __Edna Vance_____

Organization: _____OSHA/DEA/Office of Statistical Analysis_____

Appraisal Period: ~~02/07/2005~~ 3/1/05 To ~~05/09/2005~~ 6/1/05

## Establishment of the Performance Management Plan

We have discussed this plan; written comments have _____ have not _____ been attached.

Employee: _____ Date: _____

Rating Official: _____ Date: 2/10/05

Reviewing Official: _____ Date: 2/24/05

Employee declined to sign new standards via note dated 2/24/05. RW

## Mid-Term Progress Review Certification

The mid-term progress review has been conducted.                    Performance management plan RW

Employee: _____ Date: _____

Rating Official: _____ Date: _____

## Performance Appraisal and Rating

|  | | |
|---|---|---|
|  | **Exemplary** | Exceed standards for all elements |
|  | **Highly Effective** | Exceed standards for 50% or more elements but not all; meet standards for all other elements |
|  | **Effective** | Meet standards for all elements and may exceed standards for less than 50% of elements |
|  | **Minimally Satisfactory** | Need to improve performance for one or more elements |
|  | **Unsatisfactory** | Fail to meet standards on one or more elements |

We have discussed this appraisal; written comments have ___ have not ___ been attached.

Employee: _____ Date: _____

Rating Official: _____ Date: 7/20/05

Reviewing Official: _____ Date: _____

**Performance Summary**

For each element, use an "X" to indicate the appropriate rating. Element ratings:  E = Exceed, M = Meet, NI = Need to Improve, F = Fail

| ELEMENT | ELEMENT RATING | | | |
|---|---|---|---|---|
| | E | M | NI | F |
| Result 1 | X | | | |
| Result 2 | | X | | |
| Result 3 | X | | | |
| Result 4 | X | | | |
| Result 5 | | X | | |
| Result 6 | | | | |
| Result 7 | | | | |
| Result 8 | | | | |

**PURPOSE OF APPRAISAL:** _____ **Interim Rating** _____ **Rating of Record**

**CONSIDERATION GIVEN TO OTHER RATINGS IN RATING OF RECORD:**
Any written performance information (including interim ratings and performance information on details or temporary reassignments/promotions) since the last annual rating of record will be taken into account in this rating of record.   If these interim performance ratings or information impact the overall rating of record, explain fully in this space.

**Other Significant Accomplishments**

## Elements

**Element 1**:  Prepare comprehensive data analysis reports for government and public distribution and use on selected industries, topics and/or request from customers.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Performance Standard:**   Performance is acceptable when final products are produced in a user friendly, organized manner; containing accurate and useful information.

**Narrative:**    Ms. Vance developed a comprehensive data analysis report on immigrant and Hispanic fatality investigations.  Ms. Vance's user friendly report contains useful information that will assist the agency's enforcement directorate as well as oits field units to better target their limited resources.

Rating:
- [X] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

**Element 2:**   Develop plans of action to address key issues related to completion of assignments. Prepare observations and conclusions for use by intra-agency staff, inter-agency staff and customers.

**Performance Standard:**    Performance is acceptable when plans and observations are accurate and address the stated objective.

**Narrative:**   (None)

Rating:
- [ ] Exceeds described level of performance (narrative required)
- [X] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

Page _____ of _____

DL-1-384
7/2003

| Elements | |
|---|---|

**Element: 3:**   Develop studies and/or reports related to technical issues of selected topics. Communicate with necessary experts, consultants, advisors or contractors to resolve issues.

**Performance Standard**:   Performance is acceptable when assignments are carried out to meet established standards for accuracy, thoroughness and timeliness.

**Narrative:**  Ms. Vance developed the first draft of the OSHA Recordkeeping Handbook.  The draft handbook is comprehensive, intended for the public, incorporates a user-friendly format, and reflects well as a major milestone for the Agency.  Ms. Vance also supervised the work of a junior analyst during this assignment.

Rating:
- [X] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

**Element: 4:**  Ability to research and develop material in comparable report format for use by inter and intra agency.  Able to communicate information expressing technical accuracy and maintaining a level of understanding for all interested parties.  Ability to work cooperatively with other inter and intra agency staff.

**Performance Standard:**   Performance is acceptable when information communicated is accurate, understandable and organized and feedback is positive.

**Narrative:**    Using diverse, comparable, and expansive sources of information Ms. Vance developed user-friendly products for the Agency and the public.  Two primary products were a compilation of OSHA Fatality Investigations of Immigrants and Hispanics for the time period FY 2002 to FY 2004, and a draft OSHA Recordkeeping Handbook.  The final Recordkeeping Handbook is expected to be used by the private sector as well as federal agencies.  The Immigrant and Hispanic report is expected to assist the Agency with better targeting and potentially expanded programs for the immigrant and Hispanic communities.

Rating:
- [X] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

| **Elements** | |
|---|---|

**Element 5:**  Ability to communicate with staff of all levels information that is accurate and user friendly.

**Performance Standard:**    Performance is acceptable when accurate analysis and reports of findings are made available in a timely fashion.

**Narrative:**  (None)

Rating:
- [ ] Exceeds described level of performance (narrative required)
- [x] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

**Element 6:**

**Performance Standard:**

**Narrative:**

Rating:
- [ ] Exceeds described level of performance (narrative required)
- [ ] Meets described level of performance (no narrative required)
- [ ] Needs to improve in order to meet the level of performance in the standard (narrative required)
- [ ] Fails to meet described level of performance (narrative required)

Standard Form 50
Rev 7/91
U.S. Office of Personnel Management
Guide to Processing Personnel Actions, Chapter 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name   (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| Vance, Edna L | 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 | 09-29-1944 | 01-21-2004 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 840 | Individual Cash | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| V3G | 5 U.S.C. 4503 | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
| | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | PROGRAM ANALYST<br>Job Code (PD):   K00196 |

| 8.Pay Plan | 9.Occ. Code | 10.Grade or Lvl | 11.Step or Rate | 12.Total Salary | 13.Pay Basis | 16.Pay Plan | 17.Occ. Code | 18.Grade or Lvl | 19.Step or Rate | 20.Total Salary/Award | 21.Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | $1,060.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | Occupational Safety and Health Administration<br>OFFICE OF THE ASSISTANT SECRETARY<br>DIR OF EVALUATION AND ANALYSIS<br>OFC OF STATISTICAL ANALYSIS |

## EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 2   1-None   3-10 Point/Disability   5-10 Point/Other<br>2-5 Point   4-10 Point/Compensable   6-10 Point/Compensable/30% | 1   0-None   2-Conditional<br>1-Permanent   3-Indefinite | | X   YES       NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| C0   Basic Only | 9   Not Applicable | |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| 1   CSRS | 08-06-1967 | F   Full Time | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1   1-Competitive Service   3-SES General<br>2-Excepted Service   4-SES Career Reserved | E   E-Exempt<br>N-Nonexempt | F054SYBQ250001101000 | 0010 |

| 38. Duty Station Code | 39. Duty Station   (City-County-State or Overseas Location) |
|---|---|
| 110010001 | WASHINGTON  Dist Columbia  DC  USA |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | PAR Number: |

| 45. Remarks |
|---|
| |

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. Department of Labor | Douglas S Goodell<br>HUMAN RESOURCES OFFICER |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| DLSH | 3444 | 01-26-2004 |

1 -          Employee Copy

Editions Prior to 7/91 Are Not Usable After 6/30/93

Page      of

I have reviewed this statement, which consists of ___14___ pages, and hereby solemnly ___ swear / affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential, will become a permanent part of the record of investigation, and may be shown to any necessary party.

_____     October 17 2005
      (Signature of Affiant)           (Date)

Signed before/received by me at (Street and City) _____

on this ____ day of _____, 20_____

_____
      (Signature of Investigator)

CRC Form 10
Rev. 3/03

```
Exhibit:    F-1
Page 14 of 14 Pages
```

Initials: *eli*